17 N.J. Super. 458 (1952)
86 A.2d 283
BOOST COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RANDLE B. FAUNCE, E. LESTER STOCKTON, SR., RANDLE N. FAUNCE, E. LESTER STOCKTON, JR., AND DRINK ATOAST, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1952.
Decided February 6, 1952.
*460 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. W. Louis Bossle argued the cause for the plaintiff-appellant.
Mr. Charles A. Cohen argued the cause for the defendants-respondents (Messrs. Worth & Worth, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
In its appeal, the plaintiff-appellant, Boost Company, abandons argument on the alleged predatory trade practices of defendants and concerns itself with the single question as to whether defendants' acts constitute a breach of trust in using knowledge of the "Tak-Aboost" formula obtained while engaged as employees of the plaintiff-company in the manufacture and sale of a soft drink syrup known as "Atoast," sold in competition to plaintiff's product.
*461 The matter was tried before the Chancery Division upon the theory that plaintiff manufactured its product "Tak-Aboost" under a secret formula which became known to defendants, Randle B. Faunce and E. Lester Stockton, Sr., while they were engaged as employees of the plaintiff, and that by reason of the knowledge thus acquired during their confidential relationship with the plaintiff they may not use this secret information or any variation thereof in the manufacture of a product in competition with plaintiff. The trial court concluded that there never was a set, fixed, permanent formula for "Tak-Aboost"; that the defendants were manufacturing a product different from that of the plaintiff; that the formulae for the two products were different; that defendants had a right to manufacture and vend their product under the name of "Atoast," which was sufficiently different from plaintiff's "Tak-Aboost" and that the label was not confusing to the public; that the caramel color was in common use and that the type of bottles used by defendants was not an infringement and, furthermore, that defendants had the right to solicit and sell to plaintiff's customers.
Benjamin R. Faunce, originator of the soft drink syrup known as "Tak-Aboost," developed the formula sometime prior to the formation of the plaintiff-corporation on May 15, 1915, for the purpose of manufacturing and selling that product. Title to the secret formula was transferred to the corporation. Benjamin R. Faunce was president of the Boost Company until his death on April 27, 1949, and defendants, Randle B. Faunce and E. Lester Stockton, Sr., sons of the originator of the soft drink formula, were employees of the company, to whom the father disclosed the formula while they worked about his drug store in their early years. Shortly after the death of Benjamin R. Faunce, Randle B. Faunce and E. Lester Stockton, Jr., had a disagreement with B. Paul Faunce, also a son of Benjamin R. Faunce, and his widow, Maude F. Faunce. They severed their employment with the Boost Company and on or about January 3, 1950, the defendant-corporation known as Drink-Atoast was *462 organized and began the manufacture and sale of a soft drink beverage known as "Atoast" in competition with the Boost Company.
Plaintiff contends that "Tak-Aboost" is the product of a secret formula; that the defendants acquired knowledge thereof by virtue of a confidential relationship and their utilization of that secret or any variation thereof to manufacture and market "Atoast," in competition with plaintiff, is a breach of trust; and that the trial court's findings and judgment to the contrary are erroneous. The defendants do not dispute the legal propositions advanced by the plaintiff, but contend that the factual situation does not support the basis for their invocation.
The first question presented for our consideration is whether the plaintiff's formula constitutes a trade secret. We point out that the defendants did not, either at the trial or on appeal, seriously challenge the plaintiff's contention that "Tak-Aboost" was produced by a secret formula originated and perfected by Benjamin R. Faunce. In fact, in their answer and in the answering affidavit of Randle B. Faunce, they made such an admission. The defendants rely primarily on their defense that the formula now in use by the plaintiff is not the same formula as that perfected by the father and, of greater importance, they insist, that the defendants' formula is entirely different and is the product of their own experimentations and discovery. The trial judge concluded, inter alia, that, as stated, the plaintiff's formula was never a set, fixed or permanent one. In view of Judge Haneman's determination and the fact that the briefs of the parties and their arguments on appeal were devoted somewhat extensively to this question, we think it deserves our consideration.
It is elementary that before one can be charged with unlawful violation of a confidence acquired while in the employ of another, it must be first established that there was, in fact, a trade secret owned and used by the employer. Stone v. Grasselli Chemical Co., 65 N.J. Eq. 756 (E. & A. *463 1903); Vulcan Detinning Co. v. American Can Co., 72 N.J. Eq. 387 (E. & A. 1907); Maas & Waldstein Co. v. Walker, 100 N.J. Eq. 224 (Ch. 1926). "A trade secret, within the rules pertaining to the rights which can be protected by injunction, is a plan, process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it must be confided in order to apply it to the uses intended. It differs from a patent in that as soon as the secret is discovered, either by an examination of the product or in any other honest way, the discoverer has the full right to use it, * * *. To constitute a new process subject to protection by injunction there must be employed creative faculties in originating it amounting to a meritorious discovery or invention, * * *." 43 C.J.S., Injunctions, sec. 148, p. 750. B. Paul Faunce, the only witness who testified for the plaintiff as to its formula, stated that he could not compound plaintiff's product from the portion of the written formula presented by his step-mother; that he knew that his father, the originator of the alleged secret formula, had on numerous occasions changed it and, further, that he himself was forced to experiment to find the desired results when he prepared the product for the Boost Company subsequent to his father's death. Randle B. Faunce testified that he and his brother, E. Lester Stockton, Sr., acquired knowledge of the formula for "Tak-Aboost" from their father in their early years and before the formation of the Boost Company; that the formula for "Atoast" was dissimilar from that of "Tak-Aboost" and developed through experimentation with the basic ingredients common to all soft drink beverages with the addition of an entirely different flavoring. E. Lester Stockton, Sr., testified "I have no knowledge of any formula, with Aboost or Atoast." Randle N. Faunce, son of Randle B. Faunce, testified that he did not know how to compound "Tak-Aboost" in its entirety; that he mixed the syrup but there were parts of the syrup he did not know the proportions of the ingredients and that his father, Randle B. Faunce, would finish it. Dr. Walter L. Obold, a professor *464 of biological science at Drexel Institute of Technology and a recognized expert food technologist, testified, in substance, that the ingredients of all soft drinks are well known, the only difference being in the flavoring and that he "could make a drink that would meet the public satisfaction on any beverage on the market." The inference from the testimony before us is that plaintiff's product is one capable of duplication or imitation by persons familiar with the trade. "In order for complainants to prevail, a substantial element of secrecy must exist so that, except by the use of improper means, third parties would have difficulty in acquiring the information needful for making the screens. Matters which are completely disclosed by the goods themselves are not secret after the goods are put on the market. 4 Restatement, Torts 5. * * * In the absence of agreement, there must be a strong case before the court will enjoin the use of information honestly obtained. Haut v. Rossbach, 128 N.J. Eq. 77." Carver v. Harr, 132 N.J. Eq. 207, 209 (Ch. 1942). Cf. Heyden Chemical Corp. v. Burrell & Neidig, 2 N.J. Super. 467 (Ch. Div. 1949); 43 C.J.S., supra, p. 752.
Assuming, arguendo, that the plaintiff's formula constituted a trade secret, knowledge of which was acquired confidentially by the defendants, Randle Faunce and E. Lester Stockton, Sr., the question then arises, have they committed a breach of trust, as contended by the plaintiff? It is a well settled rule of law that an employee, upon terminating his employment, may carry away and use the general skill or knowledge acquired during the course of the employment. Junker v. Plummer, 320 Mass. 76, 165 A.L.R. 1449, 67 N.E.2d 667 (Mass. Sup. Jud. Ct., 1946); Am. Law Inst. Restatement, Agency, sec. 396 (b). It is also a generally accepted rule of law that one who by reason of a confidential business relationship with the owner has gained knowledge of his trade secret will be restrained by a court of equity from betraying the trust imposed in him by using the secret for his own gain; and a confidential relation within this rule is one which gives rise to a duty not to use or divulge *465 the secret to the detriment of the owner. Carver v. Harr, supra. Club Razor & Blade Mfg. Corp. v. Bindzsus, 131 N.J. Eq. 283 (Ch. 1942), affirmed 133 N.J. Eq. 38 (E. & A. 1943). "On the other hand, trade secrets are not given protection against all the world or persons who have not learned the secret by improper means or by virtue of a confidential relation; all that the owner of a trade secret is entitled to is protection from a breach of contract or confidence against one to whom he has confided the secret and those to whom such person may divulge it, and anyone who honestly and fairly comes into possession of the secret has the right to use, disclose, or sell it without being subject to restraint by injunction." 43 C.J.S., supra, at p. 753.
The plaintiff lays great stress upon the case of Germo Mfg. Co. v. Combs, 240 S.W. 872 (Mo. Ct. of App. 1922). In that case, a medicinal remedy or tonic for poultry was manufactured by the plaintiff, the formula for which had been sold by the defendant to the plaintiff. The defendant, who had been an officer and employee of the plaintiff, severed his relationship and, in association with others, engaged in the manufacturing of a similar product under a different name. The functional constituents in the two formulae were found to be the same, so far as the active ingredients were concerned, differing only in color. However, the coloring matter was non-functional and did not contribute to the medicinal or remedial value of the tonic. This was also true with the only other difference between the two remedies. The plaintiff's product used water and the defendant's buttermilk as carriers, but neither contributed anything to the medicinal or remedial value of the preparation. In the Combs case it was established that the functional ingredients were the same in both and the court, therefore, properly enjoined the defendant from producing and manufacturing it. In the instant case, however, the proofs establish that the flavoring compounds are functionally different in the respective syrups. Further, the parties here admit that the basic ingredients of the soft drink syrup are common to both their products, commonly *466 known to the trade; that these elements constitute approximately 99 per cent of the compound and that the distinguishing element is the flavoring factors which constitute approximately one per cent of the compound. The record reveals that defendants' compound is composed of basic ingredients similar to plaintiff's, but in different proportions, and that the flavoring agents are different from plaintiff's; that in the plaintiff's syrup the flavoring compound consists of extract of mace and oil of lemon (cut), but in "Atoast" the flavoring compound consists of oil of lemon (cut), oil of lemon 5x, and oil of lime. The testimony justifies a finding that "Atoast" is a drink distinguishable in taste from "Tak-Aboost." In fact, Dr. Obold testified that "In a soft drink the only difference is the flavor, with the exception of the percentage of acids that might be used" and that the addition or omission of one essential oil means "* * * the difference between orange and raspberry" and with respect to a beverage such addition or omission "In most instances it is the only in kind." The proofs justify a finding that the defendants' product is the result of independent experimentation and discovery.
In the absence of clear and convincing evidence of direct appropriation of a secret process or compound owned by plaintiff to the benefit of the defendants and in the face of testimony that the products are, at best, only one per cent unique, which element is obtainable by use of flavoring agents, and that the basic elements are well known to the trade and that the plaintiff arrived at the formula it now uses by experimentation from the basic elements and that the defendants' product, known as "Atoast," is the result of the use of flavoring agents, dissimilar to that of plaintiff's, mixed with proportions of the basic elements at variance with the plaintiff's formula, we fail to find that the proofs establish the use of confidential information obtained by defendants while serving as employees of the plaintiff-company resulting in injury to the plaintiff, which finding is requisite to the injunctive relief demanded.
The judgment of the Chancery Division is affirmed.