275 N.J. Super. 159 (1994)
645 A.2d 1207
TRUMP'S CASTLE ASSOCIATES T/A TRUMP CASTLE CASINO RESORT, PLAINTIFF-RESPONDENT
v.
JOSEPH TALLONE, DEFENDANT, AND ADAMAR OF NEW JERSEY, INC., D/B/A TROPWORLD CASINO AND ENTERTAINMENT RESORT, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1994.
Decided July 13, 1994.
*160 Before Judges KING, HAVEY and ARNOLD M. STEIN.
Mark H. Sandson argued the cause for appellant (Hankin Sandson & Sandman, attorneys; Mr. Sandson, on the brief).
Lloyd D. Levenson argued the cause for respondent (Cooper Perskie April Niedelman Wagenheim & Levenson, attorneys; Mr. Levenson, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
We granted leave to appeal from an order of the Law Division of November 19, 1993, refusing to quash a subpoena duces tecum issued by Trump's Castle against TropWorld Casino. The subpoena was issued by Trump's Castle during the course of discovery relating to an action by it against a former employee, Joseph Tallone. TropWorld contended that the subpoena called for the revelation of "trade secrets" or proprietary information relating to marketing strategy which it should not have to disclose to a vigorous competitor in the gaming industry, especially since TropWorld *161 was not a party to the primary dispute in litigation. We conclude that the Law Division judge should have reviewed the materials and taken any necessary testimony in camera, outside the presence of Trump's Castle's attorneys or representatives, and then reached a conclusion whether the subpoenaed information was protected from routine discovery disclosure in civil litigation. On the present record, we cannot tell if the subpoenaed information warrants protection from disclosure as a "trade secret."
In 1992 Joseph Tallone was employed by TropWorld Casino in Atlantic City. Tallone worked at TropWorld in a supervisory position over several employees. In the summer of 1992, Tallone solicited employment with Trump's Castle, claiming that he and Ron Collapardi, Bimal Dua, Lou Pascal, James Palladinetti, Ping Bagg and Chi Hui could bring "`high roller' patrons" to Trump's Castle Casino. Trump's Castle hired Tallone and the others. Tallone was hired as Vice-President of Player Development under a two-year written contract from September 1, 1992 to August 31, 1994 for $205,000 a year plus fringe benefits, car allowance of $750 a month, and a bonus in Trump's Castle's discretion.
Tallone's performance did not reach Trump's Castle's expectations. Neither Tallone nor the other new employees brought substantial new business or increased receipts for Trump's Castle. They were terminated in January 1994. Trump's Castle was allegedly "forced to expend considerable sums in employee salaries and other expenses occasioned by the misrepresentations of Tallone" and brought this suit against Tallone and a separate suit against two of the others for fraud, misrepresentation and breach of contract. Tallone counterclaimed for damages.
On August 30, 1993, Trump's Castle served a subpoena duces tecum and for oral depositions on TropWorld. Trump's Castle asked TropWorld to produce:
documents evidencing dollar amount totals (but not names) with respect to (1) the gambling patrons generated by each of the seven ex-employees, and (2) gamblers not generated by each of the seven ex-employees but who had been "coded" or assigned to each of the seven ex-employees. These dollar amounts should reflect the table drop, slot handle, total expenses (including complimentaries paid to *162 patrons and other costs attributable to obtaining those patrons, including the salary and bonuses paid to the seven ex-employees) and theoretical win with respect to each of the two categories of patrons.
"Theoretical win" refers to the "house" winnings, not the customer's.
TropWorld immediately moved to quash the discovery subpoena under R. 4:10-3(g), claiming that compliance would "require production of confidential trade secrets," relying on the definition in the Restatement of Torts § 757 (1939).[1] The current Restatement definition is contained at Restatement (Third) of Unfair Competition § 39 (Tentative Draft No. 4, March 25, 1993), which defines a trade secret in "black letter" as "any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret to afford an actual or potential economic advantage over others." The Restatement, supra, § 39 comment d at 28 states in pertinent part:

d. Subject matter. A trade secret can consist of a formula, pattern, compilation of data, computer program, device, method, technique, process, or other form or embodiment of economically valuable information. A trade secret can relate to technical matters such as the composition or design of a product, a method of manufacture, or the know-how necessary to perform a particular operation or service. A trade secret can also relate to other aspects of business operations such as pricing and marketing techniques or the identity and requirements of customers (see § 42, Comment f).
TropWorld claimed that the "method by which each casino compensates its marketing personnel [and lures customers into the casino] is a closely guarded, confidential aspect of the business conducted by a given casino employer." After oral argument and some conclusory testimony by Michael Bloom, TropWorld's marketing *163 director, the judge found that the requested information was not a trade secret. She said:
I don't want to make light of TropWorld's concerns because I understand that it's a very competitive world out there. And that when you have eleven businesses, multi-million dollar businesses on a strip competing with each other, day-by-day fighting for customers, that it is a sensitive issue and that there are, certainly, business reasons for wanting to protect any edge that you may have, or that you feel you may have, or any information that may be advantageous to you. But I have considered what you've told me and I don't think any of it's a trade secret. I don't think it rises to that level. I don't think it fits the Restatement [§ 757] definition.
She also found that the information requested was essential to Trump's Castle's case. She orally ordered TropWorld to reveal the gross amount of money generated by each ex-employee through both "coded" (or established "house" patrons) and new business. The method used by TropWorld to determine which were "coded" patrons and which were new business patrons did not have to be revealed. The judge also concluded that salary and bonus information was not a trade secret. She further ordered TropWorld to provide the total costs or expense amounts attributable to each employee, but not "to break down expenses into any category other than total expenses...." She also directed that the methodology used to determine what TropWorld considered a "comp" (complimentary service to a customer) or a cost need not be revealed. Her written order simply stated that: "TropWorld shall turn over to plaintiff's counsel on or before November 22, 1993, the documents demanded in the subpoena."
As Chief Judge Arnold said in In re Iowa Freedom of Information Council, 724 F.2d 658, 662 (8th Cir.1983):
Trade secrets are a peculiar kind of property. Their only value consists in their being kept private. If they are disclosed or revealed, they are destroyed. Therefore, it makes no sense to say that a determination whether trade secrets are involved should be made in open court, with the hearing to be later closed only if the determination is that they are involved.
In camera review by a judge has been approved recently to screen privileged and confidential material not usually subject to disclosure, under the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21. See Atlantic City Convention Center Authority v. South Jersey *164 Publishing Co., Inc., 135 N.J. 53, 66-70, 637 A.2d 1261 (1994); South Jersey Publishing Co., Inc. v. N.J. Expressway Authority, 124 N.J. 478, 488-89, 591 A.2d 921 (1991) (executive session minutes and memorandum of public authority subject to in camera review); In re Environmental Ins. Actions, 259 N.J. Super. 308, 318, 612 A.2d 1338 (App.Div. 1992) (in camera review to determine if attorney-client privilege waived); Shuttleworth v. City of Camden, 258 N.J. Super. 573, 585-86, 610 A.2d 903 (App. Div.), certif. denied, 133 N.J. 429, 627 A.2d 1135 (1992); Coyle v. Estate of Simon, 247 N.J. Super. 277, 283, 588 A.2d 1293 (App.Div. 1991). The in camera review technique has been used in trade secret cases as far back as Taylor Iron and Steel Co. v. Nichols, 73 N.J. Eq. 684, 690, 69 A. 186 (E. & A. 1908); see also Multistate Tax Commissioner v. U.S. Steel Corp., 659 F.2d 931, 933 (9th Cir.1981); Management Assistance, Inc. v. Computer Dimensions, Inc., 546 F. Supp. 666, 678 (N.D.Ga. 1982), aff'd sub nom., Computer Dimensions, Inc. v. Basic Four, 747 F.2d 708 (11th Cir.1984); Heyden Chemical Corp. v. Burrell & Neidig, Inc., 2 N.J. Super. 467, 470, 64 A.2d 465 (Ch.Div. 1949).
We cannot conclude from this record whether there is merit to TropWorld's contention that the information relevant to its 1992 marketing techniques or customer procurement methods sought by the subpoena should be protected as a "trade secret." We remand and require the judge to take testimony in camera from TropWorld's appropriate witness concerning the precise information Trump's Castle seeks and the reasons specifically advanced by the TropWorld witness for non-disclosure. The judge can then analyze the information and make a generalized ruling based on adequate information under the appropriate standard. See Sun Dial Corp. v. Rideout, 29 N.J. Super. 361, 366, 102 A.2d 90 (App.Div. 1954), aff'd, 16 N.J. 252, 108 A.2d 442 (1954); Boost Co. v. Faunce, 13 N.J. Super. 63, 80 A.2d 246 (Ch.Div. 1951), aff'd, 17 N.J. Super. 458, 86 A.2d 283 (App.Div. 1952). The judge also must consider the factors customarily weighed in considering an application by a nonparty, such as TropWorld here, to limit discovery. See Berrie v. Berrie, 188 N.J. Super. 274, 284, 457 A.2d 76 (Ch.Div. *165 1983). But the judge must first know the nature of the confidential information and the precise reasons urged for secrecy before she can effectively evaluate the worth of TropWorld's claim for protection of its proprietary information.
The judge should, after hearing testimony and reviewing the documents, make specific findings of fact and give reasoned conclusions for her generalized ruling. R. 1:7-4. These findings and conclusions can be sealed pending any application for a stay or a motion for leave to appeal her ruling to this court. Of course, Trump's Castle's representatives and its attorney, and defendant Tallone and his attorney, must be excluded from the in camera proceeding. This exclusion will temporarily protect TropWorld's "trade secrets" pending the rendition of a reasoned decision by the judge and any motion for leave to appeal. "[W]e recognize that the right of a litigant to be present at the time his case is heard[] is a cherished right." Air Products and Chemicals, Inc. v. Johnson, 296 Pa.Super. 405, 442 A.2d 1114, 1128 (1982). But that "right is not absolute." Ibid. A court may insure "the means of affording adequate protection against unwarranted intrusion and invasion of the rights of one party by another party." Bead Chain Manufacturing Co. v. Smith, 1 N.J. 118, 121, 62 A.2d 215 (1948); see also State ex rel. Ampco Metal, Inc. v. O'Neill, 273 Wis. 530, 78 N.W.2d 921 (1956).
Remanded for further proceedings.
NOTES
[1] Restatement of the Law, Torts § 757 (1939), states:

Some factors to be considered in determining whether given information is one's trade secret are: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.