**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3773-20

JOHN CAROFF,

     Plaintiff-Appellant,

v.

RUTGERS, THE STATE
UNIVERSITY OF NEW JERSEY
and JEWELL BATTLE, in her
official capacity as the University
Custodian of Records,

     Defendants-Respondents.

_____

Argued August 2, 2022 – Decided August 16, 2022

Before Judges Sumners and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2018-21.

Walter M. Luers argued the cause for appellant (Cohn Lifland Pearlman Herrmann & Knopf LLP, attorneys; Walter M. Luers, on the briefs).

James P. Lidon and Paul H. Kochanski argued the cause for respondents (McElroy, Deutsch, Mulvaney & Carpenter, LLP, and Lerner David Littenberg

Krumholz & Mentlik LLP, attorneys; James P. Lidon, of counsel and on the brief).

PER CURIAM

Plaintiff John Caroff appeals an order denying his order to show cause and dismissing with prejudice his verified complaint in which he sought an order requiring Rutgers, The State University of New Jersey (Rutgers), to produce pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, the All-22 video of the December 5, 2020 football game between Rutgers and The Pennsylvania State University (Penn State). Plaintiff contends the video is a public record under OPRA and is not exempt under copyright law or OPRA's trade-secret and competitive-advantage exemptions. Unpersuaded by those arguments, we affirm.

## I.

On January 22, 2021, Rutgers received an OPRA request from plaintiff for the "All-22 film of the 12/05/2020 men's college football game between Penn State and Rutgers."[1] Plaintiff requested the video because he wanted to show it to his family, including his thirteen-year-old daughter. Plaintiff believes his

---

[1] We note plaintiff used the phrase "All-22 film" in his request, but otherwise plaintiff and defendants predominantly use the phrase "All-22 video." We understand the parties use those phrases interchangeably.

daughter "possesses the necessary skill set for her to have considerable future career success as a football strategist" and "[s]tudying [the] college football All-22 [v]ideo advances her qualifications should she seek future employment with a college football staff or as part of the media covering college football." Viewing the video, plaintiff thought his daughter would "have the opportunity to analyze collegiate football in the same way that is currently only utilized by Big Ten Conference insiders."

Rutgers's varsity football team is a National Collegiate Athletic Association (NCAA) Division I program and competes in the Big Ten Conference. The football team plays predominantly against Big Ten opponents but also plays a small number of games against strategic non-conference opponents. Transmissions of Rutgers football games are available on multiple major television networks and other services legally authorized to air the games. Tickets for home games are also available for sale to members of the public.

The All-22 video at issue is "an edited, compilation of digital video recordings of the December 5, 2020 football game." The video includes footage from two cameras: one is located at the fifty-yard line and captures a wide-angle sideline shot focused to include all twenty-two players on the field; the second is located behind the endzone and is more narrowly focused to capture

3

the line formation for each given play. Rutgers considers the All-22 video to be Rutgers's non-public proprietary information, limits internal access to the All-22 video to the team's coaching staff and student athletes, and requires a password for access to the video.

According to Rutgers's Associate Athletic Director of Football Operations, the athletic-department staff records the All-22 video for two purposes that have proprietary value to Rutgers. First, the video is used to aid coaching staff and student athletes in "evaluat[ing] the University's offensive, defensive and special team plays" and in "refin[ing] or adjust[ing] those plays" based on that evaluation. Second, the video is used to obtain scouting information concerning opposing teams. The football program "obtain[s] scouting information on their opponents by providing access to their proprietary All-22 videos to their opponents in exchange for their opponents' reciprocal grant of access to the opponents' proprietary All-22 videos." This exchange between programs not only reduces scouting costs but also "gives every team the same level and kind of scouting information regarding opponents and, as a result, enhances the fairness of competition."

According to Rutgers's Deputy Director of Athletics, "[a]ll Big Ten member schools share All-22 video with a closed group of other universities

4 <span>A-3773-20</span>

through football video sharing arrangements."  Under those arrangements, participating schools agree to upload their All-22 videos to "an internet-based video sharing program."  Access to the video-sharing program is limited to participating schools.  The Big Ten's Game Management Manual on football sets forth limitations on sharing depictions of the Big Ten football games by member schools.  Section seven of the manual "mandates a mutual exchange of game video for all games played during that season between all universities."  Section fourteen of the manual further provides, "Conference universities shall not permit depiction of Conference football games to be shown other than to alumni groups, Conference office personnel and game officials unless accompanied by a member of the university staff."  According to Rutgers's Deputy Director of Athletics, Rutgers's right to participate in the video-sharing program is contingent on its compliance with the requirements set forth in the manual.

Rutgers does not distribute All-22 video or any other game footage to the public.  According to the Deputy Director of Athletics, "college and university football programs endeavor to prevent their All-22 video from becoming public because it provides current and future opponents with a unilateral opportunity to scout their teams and student athletes."  Although many Division I football

programs have video-sharing arrangements, many programs, including Rutgers, play against non-conference opponents. Those non-conference opponents would "have nothing to gain" by entering into a video-sharing arrangement with Rutgers if Rutgers's All-22 video was publicly shared. Rather, according to Rutgers's Deputy Director of Athletics, non-conference opponents would have a "decided competitive advantage" over Rutgers by refusing to enter into mutual video sharing arrangements because, if the All-22 video were public, non-conference opponents would be able to scout Rutgers using the publicly-shared All-22 video without having to afford Rutgers reciprocal access to their own All-22 video. Public release of the All-22 video also would have a negative impact on Rutgers's relationship with other Big Ten teams, such as Penn State, in that public release would provide other Penn State opponents with the video, which includes scouting information about Penn State, without providing Penn State reciprocal access to the opponent's video. Thus, according to the Deputy Director of Athletics, a prospective opponent of Rutgers "would have reason to consider whether it was willing to play a football game against Rutgers" if the All-22 video of the game would be released publicly.

On February 17, 2021, defendant Jewell Battle, Rutgers's Custodian of Records, sent an email to plaintiff informing him Rutgers had denied his OPRA

6

request because the All-22 video was exempt pursuant to OPRA's exemptions for "trade secrets and proprietary commercial or financial information obtained from any source" and "competitive advantage," citing N.J.S.A. 47:1A-1.1. Battle advised plaintiff disclosure of the video "would give an advantage to competitors or bidders" and, consequently, Rutgers denied his request.

On April 2, 2021, plaintiff filed a verified complaint against Rutgers and Battle, in her official capacity as Rutgers's Custodian of Records, seeking to compel Rutgers to disclose the All-22 video of the December 5, 2020 game between Rutgers and Penn State under OPRA and the common law right of access. Plaintiff filed with the verified complaint his counsel's certification, which included as exhibits the email denying plaintiff's request and a copy of the Big Ten's Game Management Manual on football.

On April 30, 2021, the trial court entered an order to show cause requiring defendants to show cause why the court should not order them to produce the requested All-22 video. In response, defendants submitted certifications of the Associate Athletic Director of Football Operations in Rutgers's Department of Intercollegiate Athletics, Rutgers's Deputy Director of Athletics, Battle, and defense counsel, who included as an exhibit Rutgers's copyright policy.

In reply, plaintiff submitted his certification, in which he "agree[d] with Rutgers that the All-22 [v]ideo gives a unique perspective not found anywhere else." He represented he was "not interested in commercializing it or uploading it to YouTube," but wanted the video only to "educate [his] 13-year-old daughter." According to plaintiff, "[d]istribution of All-22 video is not limited to head-to-head competitors" but is "made available to other schools and college football analysts in multiple media organizations and ex-players." Plaintiff certified "[a]ll Division I college football teams, including Rutgers and private institutions, exchange All-22 [v]ideo with their opponents."

After hearing oral argument, Judge Alberto Rivas placed a decision on the record denying plaintiff's application. The judge first held OPRA's proprietary-information exemption applied and precluded disclosure of the All-22 video to plaintiff because Rutgers has "a significant proprietary interest in A[ll]-22 films and the sharing of these films is not indiscriminate." Rejecting plaintiff's argument that by sharing the All-22 videos with some schools Rutgers opened the door to everyone, the judge found Rutgers did not "just give[ the video] willy nilly to any person who asks for it; it is within a defined universe." Referring to the All-22 videos as "the coin of the realm," the judge found the All-22 videos "have intense value because of the information that's contained therein" and

8

"that value is reciprocated when Rutgers gets from the other school their films . . . ." He held "[i]f Rutgers's films are devalued [by] becoming generally available, that is a harm to Rutgers," precluding disclosure of the video to plaintiff under OPRA's proprietary-information exemption.

The judge also held the competitive-advantage exemption under OPRA precluded disclosure of the All-22 video to plaintiff. The judge found "if the other schools can just OPRA Rutgers['s] films, there is no corresponding duty to turn over opponents' films and that without question would put Rutgers at a competitive disadvantage." The judge found under those circumstances "schools can bypass the reciprocal process to get Rutgers['s] films and there is no corresponding [obligation] to turn over the film to Rutgers," forcing Rutgers to "either forego getting competitive information or . . . engage in the expense of sending scouts to prospective opponents which could result in increased costs," an expense Rutgers's competitors would not have to incur if Rutgers's videos were subject to disclosure under OPRA. The judge held:

> The current sharing agreement is a closed loop system dependent on mutual cooperation and that . . . is where the value exists. It's an intangible value, but it is a value of no question.
> Opening the floodgates to dissemination which would be the practical results in ordering the production of the A[ll]-22 film in this case would destroy the value, advantages and benefits that w[ere] sought to be

accomplished and encompassed in the agreement that Rutgers entered into with [other] school[s].

Regarding copyright, the court found "there is some degree of creativity which would bestow upon the [All-22] film copyrighted protection" and "the creation of this film was a copyrightable act and is subject to protection based on . . . the intentional limited distribution." The judge also found fair use did not apply because "[f]air use . . . is dependent upon access" and here "there's no generalized access" to the All-22 videos because "these films are not deposited in a location where there is unlimited access. Access is restricted here governed by contractual agreement."

With respect to the common-law access claim, the judge weighed the competing interests of both plaintiff and Rutgers and determined "[t]he interest of an individual looking to enhance job opportunities in the future while laudable do[es] not outweigh the interest of Rutgers to limit the distribution of A[ll]-22 films." The judge then denied the order to show cause, held Rutgers was not required to disclose the December 5, 2020 All-22 video, and dismissed plaintiff's complaint with prejudice. On August 11, 2021, the judge issued an order memorializing his decision.

On appeal, plaintiff argues the All-22 video is not exempt from disclosure under OPRA's proprietary information and trade secrets exemption or the

10

competitive advantage exemption and is not exempt from disclosure under federal copyright law. Plaintiff did not address the judge's finding that Rutgers was not required to disclose the All-22 video under the common law. Accordingly, plaintiff waived his common-law argument. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived."); Matter of Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 180 (App. Div. 2021) (same).

## II.

"Whether an OPRA exemption applies is a question of law subject to de novo review." Bozzi v. City of Jersey City, 248 N.J. 274, 282-83 (2021); see also Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 55 (2022) (noting we review legal questions, including the interpretation of statutes such as OPRA, de novo). We do not disturb a trial judge's factual findings if they are supported by adequate, substantial, and credible evidence. N. Jersey Media Grp., Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 295 (App. Div. 2017).

"OPRA is designed to give members of the public 'ready access to government records' unless the statute exempts them from disclosure." Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 140-41 (2022) (quoting Burnett

v. Cnty. of Bergen, 198 N.J. 408, 421 (2009)).  The purpose of OPRA is "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process."  N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 555 (2017) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)); see also Rivera, 250 N.J. at 141 (OPRA's "core concern is to promote transparency in government").

To achieve those goals, Rivera, 250 N.J. at 141, OPRA broadly defines "[g]overnment record" to include any record "made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivisions thereof," or any record "received in the course of his or its official business by any such officer, commission, agency or authority of the State or of any political subdivision thereof," N.J.S.A. 47:1A-1.1.

"The public's right to disclosure, while broad, is not unlimited."  Bozzi, 248 N.J. at 284.  "OPRA contains twenty-three explicit exemptions from disclosure." Ibid. "[I]f a document falls within one of these categories, it is not a government record and not subject to disclosure pursuant to OPRA." Commc'ns Workers of Am. v. Rousseau, 417 N.J. Super. 341, 355 (App. Div. 2010).

N.J.S.A. 47:1A-1.1 provides in relevant part, "[a] government record shall not include . . . information which is deemed to be confidential" including "trade secrets and proprietary commercial or financial information obtained from any source." A trade secret is exactly that: a secret whose "only value consists in . . . being kept private." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 169 (App. Div. 2011) (quoting Trump's Castle Assocs. v. Tallone, 275 N.J. Super. 159, 163 (App. Div. 1994)). However, to be protected from disclosure, "information need not rise to the level of a trade secret . . . and indeed, may otherwise be publicly available." Lamorte Burns & Co. v. Walters, 167 N.J. 285, 299 (2001). "Notably, OPRA does not require an independent demonstration of confidentiality. Rather, under OPRA, if the document contains commercial or proprietary information it is not considered a government record and is not subject to disclosure." Rousseau, 417 N.J. Super. at 358.

N.J.S.A. 47:1A-1.1 also exempts from disclosure under OPRA "information which, if disclosed, would give an advantage to competitors or bidders." "To justify non-disclosure under this provision, there must be 'a clear showing' that the exemption applies." Scheeler v. Off. of the Governor, 448 N.J. Super. 333, 347 (App. Div. 2017) (quoting Tractenberg v. Twp. of W. Orange,

416 N.J. Super. 354, 378-79 (App. Div. 2010)). "The 'mere potential' that disclosure of information in a government record might confer a competitive advantage upon some person or entity is not sufficient." Scheeler, 448 N.J. Super. at 347 (quoting Tractenberg, 416 N.J. Super. at 379). In Tractenberg, we held "the mere potential for future negotiations without a strong showing that negotiations are probable" was not sufficient to meet OPRA's competitive-advantage exemption. 416 N.J. Super. at 379.

OPRA also exempts information protected from disclosure by any federal law, regulation, or order. N.J.S.A. 47:1A-9(a); see also Doe v. Rutgers, State Univ. of N.J., 466 N.J. Super. 14, 23-24 (App. Div. 2021). Under the federal Copyright Act, copyright protection attaches to "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a); see also Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, ___ U.S. ___, 139 S. Ct. 881, 887 (2019). "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display." Fourth Est. Pub. Benefit Corp., ___ U.S. at ___, 139 S. Ct. at 887; see also Eldred v. Ashcroft, 537 U.S. 186, 195 (2003) ("[F]ederal copyright

protection . . . run[s] from the work's creation."). Copyrightable works include, among other things, "motion pictures and other audiovisual works." 17 U.S.C. § 102(a)(6). A work is "original" if it was "independently created by the author" and "possesses at least some minimal degree of creativity." Feist Publ'ns, Inc. v. Rural Tel. Serv., Co., 499 U.S. 340, 345 (1991). "To be sure, the requisite level of creativity is extremely low" and "[t]he vast majority of works make the grade quite easily, as they possess some creative spark." Ibid.

Based on these principles, Judge Rivas correctly applied OPRA's propriety-information, competitive-advantage, and federal-law exemptions, and we affirm.

Plaintiff mistakenly conflates the concepts of trade secret and proprietary information. Judge Rivas held the All-22 video was protected as propriety information, not as a trade secret. Although the determination of whether information constitutes a trade secret includes whether the information "is known outside of the owner's business," Newark Morning Ledger Co., 423 N.J. Super. at 169, confidentiality is not a required element for a determination that information is proprietary, Rousseau, 417 N.J. Super. at 358. Like the information at issue in Rousseau, the All-22 video is not intended for wide dissemination and the agreements about the videos delineate the specific terms

15                                                                A-3773-20

regarding their use and the persons who may review them. Id. at 359. That Rutgers chose to make the All-22 video available to individuals or entities pursuant to the limited terms of those agreements does not strip the video of its proprietary nature. Under any definition of proprietary, the All-22 video – made by Rutgers's personnel and owned, used, and distributed by Rutgers for Rutgers's intended purposes – is proprietary information and is exempt from OPRA. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (in interpreting statutory language, courts "ascribe to the statutory words their ordinary meaning and significance").

We are equally convinced, as Judge Rivas was, that requiring disclosure of the All-22 video would give an advantage to Rutgers's competitors. Credible evidence in the record supports the finding that the All-22 video is a substantial bargaining chip – or "coin of the realm" to use Judge Rivas's expression – Rutgers uses in its negotiations with other universities. Making Rutgers's All-22 video subject to disclosure under OPRA would eliminate that bargaining chip. Plaintiff's argument that the competitive-advantage exemption "can never apply to Rutgers because Rutgers can negotiate a video exchange with any prospective non-conference opponent" or because Rutgers does not have to compete against a team that refuses to share its All-22 video is nonsensical. If

16

its All-22 video were subject to disclosure under OPRA, any offer by Rutgers to share its All-22 video would have no value because the competing school could obtain Rutgers's All-22 video under OPRA. Rutgers would have to offer something else to obtain its competitor's All-22 video or, unlike its competitors, incur the cost of other scouting efforts. That inherently places Rutgers at a competitive disadvantage. Moreover, as plaintiff's counsel conceded during oral argument, under plaintiff's interpretation of OPRA, not only Rutgers's All-22 video but any All-22 video Rutgers "received" would be subject to disclosure under OPRA. See N.J.S.A. 47:1A-1.1 (including in the definition of government record any items "received" by the State entity in the course of its official business). How many schools would be willing to exchange All-22 videos with Rutgers if by doing so they would be placing their own All-22 videos in the public domain? The competitive-advantage exemption clearly precludes the All-22 video from disclosure under OPRA.

OPRA's federal-law exemption also applies. The All-22 video is a copyrightable work under the Copyright Act. It is an "original work[] of authorship," 17 U.S.C. § 102(a), "independently created by" Rutgers's football staff and "possess[ing] at least some minimal degree of creativity," subjecting it to copyright protection. See Feist Publ'ns, Inc., 499 U.S. at 345. The fair-use

17

doctrine, on which plaintiff relies, is a defense to a copyright-infringement claim. See Georgia v. Public.Resource.Org, Inc., ___ U.S. ___, 140 S. Ct. 1498, 1513 (2020); Golan v. Holder, 565 U.S. 302, 329 (2012). Having not made use of the All-22 video, plaintiff cannot rely on the fair-use defense. Accordingly, plaintiff's fair-use argument is inapplicable, and we need not address it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3773-20