155 N.J. Super. 316 (1978)
382 A.2d 925
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GREGORY MELVINS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 30, 1977.
Decided January 11, 1978.
*318 Before Judges MATTHEWS, BISCHOFF and HORN.
Mr. Ezra D. Rosenberg, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Ms. Barbara S. Rosenberg, of counsel and on the brief).
Mr. Philip B. Seaton, Assistant Prosecutor, argued the cause for respondent (Mr. Thomas J. Shusted, Camden County Prosecutor, attorney).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
The question involved in this appeal deals with the scope to be accorded R. 3:13-3 (b) (1) of the rules governing criminal practice.
Defendant was indicted by a Camden County grand jury for the murder of one James Brown, the arson of Brown's dwelling house and an accompanying robbery. As part of pretrial proceedings defense counsel filed numerous motions for discovery, including the request for all questions, answers and the names of operators, and the conclusions drawn of and from polygraphs which had been given to any state witnesses, especially two eyewitneses, and all reports of any experts or lay witnesses on the issue of arson. The prosecutor fully complied with the discovery requests.
Subsequent to that compliance the prosecution learned that defendant had taken a polygraph examination in the Camden County Jail at the instance of the Public Defender. The State then moved, under R. 3:13-3(b) (1), for the defense to furnish the State with the questions, answers and results *319 of the test. The trial judge granted the State's motion. Shortly thereafter the prosecutor also moved that he be furnished with copies of any reports submitted by William Alvine Associates, Inc. to defendant's counsel with respect to the alleged arson of Brown's dwelling house. Once again the State relied on R. 3:13-3(b) (1), and also the opinion of another part of this court in State v. Mingo, 143 N.J. Super. 411 (App. Div. 1976). This motion was also granted by the trial judge over the objection of the Public Defender.
Defendant moved for leave to appeal to this court, and leave was granted. Briefs have been filed and we have heard oral argument on the issue.
During the pendency of the motion for leave to appeal the State withdrew its motion for information with respect to the polygraph test given to defendant, including the request for the questions and answers asked and given. The State concedes before us that it would not be entitled to such information since it would violate defendant's Fifth Amendment rights against testimonial compulsion. Thus, we are solely concerned with the question of whether the trial judge's order to permit the report of William Alvine Associates, Inc. was proper.
We also note that defendant now states before us that the report in question will not be used at trial. No such unequivocal statement was made at the time that the motion for production was heard.
We conclude that the interpretation of the rule given by the trial judge is erroneous in that it does not restrict discovery thereunder to reports that defense counsel intends or may reasonably expect to use at trial.
We believe that the trial judge's interpretation of the rule here infringed upon a fundamental right accorded defendant  that of effective assistance of counsel. This right granted under the Sixth Amendment has been made applicable to the several states through the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Indeed, our own State has since very *320 early times given strong recognition to a criminal defendant's right to counsel. Rodriguez v. Rosenblatt, 58 N.J. 281, 285 (1971); N.J. Const. (1947), Art. I, par. 10 (1947).
The right to counsel bears a close relationship to the traditions of our common law adversary system. Hence, there should be no restriction upon the function of counsel in defending a person charged with crime. Herring v. New York, 422 U.S. 853, 857, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). Moreover, while the privilege against self-incrimination may not be an aid in the search for truth, the right to counsel has been deemed such. When the right to effective assistance of counsel is impeded, a criminal proceeding is infected with the clear danger of convicting the innocent  a conviction which cannot be permitted to stand. Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), reh. den. 383 U.S. 931, 86 S.Ct. 925, 15 L.Ed.2d 850 (1966); United States ex rel. Allison v. New Jersey, 418 F.2d 332, 337 (3 Cir.1969).
The right to counsel includes the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). It means providing the defendant with those necessary tools, such as investigative support and expert analysis that he needs to carry on his defense. State v. Horton, 34 N.J. 518, 534 (1961); American Bar Association Standards Relating to Providing Defense Services, § 1.5 (Approved Draft 1968). Cf. State v. Green, 55 N.J. 13 (1969) (refusal by trial judge to appoint handwriting expert violated Sixth Amendment). We believe that the right to effective assistance of counsel includes the right to have any communications made by experts remain confidential.
Of course, once a defendant seeks to use the expert as a witness, then any such reports the defendant seeks to introduce into evidence are discoverable by the prosecution. Cf. United States v. Nobles, 422 U.S. 225, 240, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (defendant's voluntary election *321 to make testimonial use of defense investigator's report waived Sixth Amendment right to confidentiality of the report). Compare Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed. 2d 446 (1970):
The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. The pressures generated by the State's evidence may be severe but they do not vitiate the defendant's choice to present an alibi defense and witnesses to prove it, even though the attempted defense ends in catastrophe for the defendant. However "testimonial" or "incriminating" the alibi defense proves to be, it cannot be considered "compelled" within the meaning of the Fifth and Fourteenth Amendments. [At 83-84, 90 S.Ct. at 1897]
Here, as stated before, defendant has no intention of using the Alvine report at trial.
We also find that an interpretation of R. 3:13-3(b) (1) which mandates disclosure of material a defendant does not intend to use at trial results in a deterrence of or (in the argot of the constitutional lawyer) "chilling effect" on the exercise of the right to counsel by a criminal defendant. It seems most probable that defense counsel, knowing a defendant is compelled to furnish to the prosecution all expert reports which he may receive, whether or not defendant intends to use them at trial, will be reluctant to conduct effective or complete investigations.
Intrinsically connected to the policy behind the right to effective assistance of counsel is the attorney-client privilege. As codified in Evid R. 26, that privilege protects "communications between lawyer and his client in the course of that relationship and in professional confidence * * *." The privilege has its foundation in the common law and is deemed indispensable to the fulfillment of not only the right to counsel *322 but also the right against self-incrimination. State v. Kociolek, 23 N.J. 400, 414-415 (1957); In re Selser, 15 N.J. 393, 403-404 (1954). In short, the privilege is based on the rationale that the individual's interest in freedom from apprehension when consulting his legal advisor outweighs the public concern in search for truth. State v. Kociolek, above, 23 N.J. at 415; In re Selser, above, 15 N.J. at 404-405.
In Kociolek defendant was accused of murder. He contended at the trial that he had suffered an amnesia for a period before the alleged commission of the crime and for a period subsequent thereto. In preparation for the first trial, defendant's attorneys employed the services of Dr. James B. Spradley, a psychiatrist, to examine their client for the purpose of informing them whether or not a defense of insanity or some other mental condition might be utilized. The result of Dr. Spradley's examination of defendant was unfavorable to defendant. Consequently, counsel decided against using him as a witness at trial. The prosecutor learned of Dr. Spradley's examination and his unfavorable report after the first trial. At the second trial, the State called Dr. Spradley as a witness. In determining that it was erroneous to have allowed Dr. Spradley to testify for the State, Mr. Justice Heher, writing for the court, stated (and on this point the court was unanimous):
Dr. Spradley and the defendant did not bear to one another the relation of physician and patient; it was not contemplated that the psychiatrist would treat or prescribe a course of treatment for the accused, such as would be deemed needful or prudent after a professional examination and diagnosis; the psychiatrist was retained by the accused's attorneys to inquire into his mental condition and competence, with particular relation to the time of the lethal acts, and to impart to his attorneys the benefit of his expert judgment and experience for their use in the preparation and presentation of the defense; and the communications made by the accused to the psychiatrist in response to his interrogation as to the circumstances of the fatality and matters bearing upon his mental processes, and so also the consequent mental diagnosis and opinion, are privileged, just as much so as if the revelations had been made by the accused *323 directly to his attorneys. The privilege extends to the necessary intermediaries and agents through whom the communications are made. And it includes communications between the attorney and a scientific expert retained to aid in the presentation of the defense, a confidential employment. See Annotation, 139 A.L.R. 1256. The principle is of the essence of the ancient common-law attorney-client privilege, in this country and in England and the continental countries deemed a basic civil right, indispensable to the fulfillment of the constitutional security against self-incrimination and the right to make defense with the aid of counsel skilled in the law. * * * [Emphasis supplied]
This clear substantive expression as to the confidential nature of the communications between defense counsel and a scientific expert sets forth our understanding of the applicable law. We do not read State v. Montague, 55 N.J. 387 (1970), to the contrary. Nor do we believe that the adoption of R. 3:13-3(b) (1) purports to overrule Kociolek. See Winberry v. Salisbury, 5 N.J. 240 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).
In view of the foregoing, we conclude that the order below represents an unambiguous transgression of the attorney-client privilege accorded to defendant. Defendant and his counsel must have the opportunity to test confidentially various defense strategies, free from the apprehension of having to furnish the State with incriminating information.
In view of our determination we find it unnecessary to pass upon the arguments raised by defendant that the use of the report in question would violate his right against self-incrimination.
Reversed.