**DWORMAN BUILDING CORPORATION, L. J. D. Enterprises, Inc. and V. Dworman Company of New Jersey, Plaintiffs,**

v.

**GENERAL SERVICES ADMINISTRATION and Gerald J. Turetsky, Defendants.**

No. 78 Civ. 2889.

United States District Court, S. D. New York.

April 3, 1979.

Rogers & Wells by Robert D. Larsen, Judith B. Bass, New York City, for plaintiffs.

Robert Fiske, Jr., U. S. Atty., S. D. N. Y. by Stuart I. Parker, Asst. U. S. Atty., New York City, for defendants.

## FINDINGS AND CONCLUSIONS

BRIEANT, District Judge.

Plaintiffs are affiliates and are the owners of the so-called ECOM office building in New Shrewsbury, New Jersey. Defendants are the governmental agency (hereinafter "GSA") and administrator acting for the government unit holding possession of a portion of the ECOM building under a long term lease.

This action was filed in this Court on June 26, 1978. The Court has subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B) (FOIA) and 28 U.S.C. § 1361. Motions for summary judgment made by both sides having been denied, the action was tried before the Court without a jury on February 16, 1979. Post-trial memoranda and submissions of the parties have been received and considered.

In accordance with its customary procedures before entering into a lease of privately owned property to be occupied as an office building by the federal government, the GSA caused a "Preliminary Appraisal" to be prepared and completed on July 28, 1971 by Mr. James McCabe, a GSA staff appraiser. The plaintiffs proposed to construct a new office building for the partial use and occupancy of the United States Army Electronics Command, known as ECOM. At the time the appraisal was prepared, no lease existed between the parties, and construction of the building had not begun. Accordingly, the appraisal was based on the plans and specifications of the proposed building. In accordance with usual GSA leasing procedures, the appraisal of 44 pages, exclusive of four attached exhibits, contained the author's estimate of the fair market and fair rental value, setting forth in detail the rationale by which these figures had been computed.

Plaintiffs have requested the lease under FOIA, and have been furnished a redacted copy, which eliminates all the land and building valuation data and excludes the reference to the particular method of valuation or value approach being used by the appraiser. The items withheld or redacted from the copy of the appraisal which has been given to plaintiffs are as set forth in detail in paragraph 7 of the Affidavit of Richard H. Gaskins, sworn to December 8, 1978, except for item "c" thereunder, which was subsequently disclosed, as appears from a letter dated February 14, 1979 from the United States Attorney in this District, which has been filed in the action. Each of the figures or items withheld is either (i) an element which the appraiser weighed in arriving at his appraised value of the project when completed, or (ii) an adjustment factor which the appraiser developed and applied to his value estimates in order to arrive at an estimate of a related cost. While the appraiser's selection of relevant. elements, and his adoption of each adjustment factor reflects his personal expert

judgment or opinion, it is entirely possible that he may have considered in reaching his judgment consultations he may have had with staff employees of the GSA. Any such information so derived, of course, has not been requested, and is not denoted in the appraisal. The appraiser evaluated comparable parcels, making adjustments for location, size and transaction date to furnish a predicate for his market value estimates.

This appraisal, which the Court has examined *in camera*, is nothing more than the effort of an expert to apply market concepts to a specific parcel of land upon which a proposed building was to be erected at then current (1971) costs. In creating it, McCabe drew upon expert but generally available knowledge of real estate market conditions in the community. According to appraisal theory, any qualified appraiser could have appraised the property, and if the same approach to value were followed, and the same adjusted comparable sales or rentals were used, and the same capitalization rates and operating cost estimates were applied, then the resultant values appraised by two or more such experts should be substantially identical. Our experience with appraisers in litigation is often to the contrary: one party's appraiser will often value a given parcel at a substantially different amount of money than the adverse party's appraiser. This is a matter dependent upon the credibility or bias of the appraisers and does not reflect adversely upon the recognized theory by which a valid appraisal of real estate is made. In theory at least, an appraisal of sale or rental value of specified land and building is no different than appraisal of a specific used car, or the contents of merchandise within a warehouse, or used manufacturing equipment. It is more factual than theoretical, and has no element of secret strategy within it. Assuming this appraisal was honestly prepared, any other qualified appraiser's work should be, in appraiser's argot, "in the same ballpark."

To call the document a "preliminary" appraisal is, in a sense, confusing. This nomenclature connotes only that the appraisal was made prior in time to the actual construction, which, in turn, did not commence until after the lease was signed. So long as the final construction conforms substantially to the plans and specifications for an appraised proposed building, GSA does not require a reappraisal after construction, or "final" appraisal. No reappraisal or "final" appraisal was required for this building.

After the preliminary appraisal, the parties negotiated the lease, at arms length. Since construction was completed, the Government has been paying a negotiated rent under the lease. The appraisal has never been revealed to plaintiffs, but in bargaining with plaintiffs at arms length to effectuate the lease, it was unlawful for GSA to exceed the appraised rental value. It could bargain to pay less.

The lease comprises approximately 535,000 net usable square feet of space at an annual rental of $2,851,550. Although executed on August 27, 1971, it commenced March 2, 1974, and has a term of 20 years with four 5 year options to renew.

Under the lease the landlord pays the taxes and is responsible for providing certain operating services, such as cleaning, maintenance and electricity. After the first 5 year period, historic increases in those costs are shifted in part to the Government pursuant to a tax escalation clause and an operating costs escalation clause. These items thereafter are to be re-adjusted at 5 year intervals. The method for adjusting the operating costs at the 5 year intervals calls for lessor to submit its experience data. In the absence of agreement on an escalation adjustment, the GSA may provide the operating services itself, and "deduct from the annual rental an amount based on the actual cost to the lessor of the operating services during the immediate preceding period."

The first 5 year period under the lease ended in March 1979. Negotiations under the escalation clauses, if not already started, should begin shortly. In addition, a dispute concerning contract claims arising out of the construction and occupancy of the building remains unresolved.

The withheld appraisal is typical of the usual real estate appraisal furnished by skilled experts in the art of valuing real estate following one or more of the various generally accepted methods of appraisal.

Defendants decline to disclose the entire appraisal, relying on Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). They contend that there is a "possibility" that these estimates of value and cost in the preliminary appraisal could be put to use in future dealings by the GSA concerning the ECOM office building. This suggests that knowledge of this 1971 appraisal would place the Government at a competitive disadvantage in "future negotiations with plaintiffs." Defendants also suggest that there is a "possibility" that negotiations for additional space in the ECOM building might take place, or that the Government "might" purchase the building at some future time.

The Government suggests dire consequences if these estimates by the appraiser made by him in 1971 of the values and costs of a building, not then constructed, should now be disclosed. Defendants urge that disclosure of the estimates would impair "negotiations over future rental increases" and that there would be such a "shift in the focus of negotiations" as would result in the Government paying a higher rent than it otherwise would have paid.

The fears expressed by GSA relate of course only to negotiations. Administrative adjudication is provided for in the lease when disputes cannot be resolved by agreement, and we must not lose sight of the fact that the United States has the power of eminent domain.

The Court regards these fears as somewhat overblown in this particular case. The appraisal represents no more than one man's opinion about the value and costs of a building, which at the time he appraised it was no more than a gleam in the promoter's eye and a set of architect's drawings.

Much change in circumstance has occurred since 1971. The building has actually been constructed and occupied. The ensuing years of inflation have distorted the values of property and changed both the cost and the methods of operating buildings.

Such secular change has by no means been uniform, but has varied in different types of buildings where different types of services are given, and in different communities, depending on market forces, including the demand for such structures by the private sector. Defendants have failed to prove that this appraisal, if disclosed in full, would be of any material advantage to plaintiffs, or of any significant detriment to the public interest. Furthermore, nothing in the appraisal is binding on the GSA. The United States Government can still enjoy its full bargaining position in the matter, and if bargaining collapses because of GSA or landlord intransigence it is possible for the United States to exercise its sovereign powers and remit these plaintiffs to administrative adjudication or to the Court of Claims.

Our determination of these issues does not depend upon our view of the wisdom of the statute, or mere inconvenience or embarrassment which might affect the Government as a result of disclosure. Defendants argue that the appraisal is exempt from disclosure under 5 U.S.C. § 552(b)(5) of FOIA, as an intra-agency memorandum, which would not be available by law to a party other than an agency in litigation with the agency.

As to this exemption the Government has the burden of proof. The exemption was intended to protect the decision making processes of Government agencies. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1974). The exemption does not extend to factual information "unless it is inextricably intertwined with policymaking processes." *Mink v. E. P. A.*, 150 U.S.App.D.C. 233, 464 F.2d 742 (1971), *reversed on other grounds*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1972). Mr. Gaskins conceded on cross-examination (Tr. p 58), that the appraisal itself did not reflect any intraagency deliberations or policy deliberations of the GSA. The Court concludes that at most the ap-

praisal was intended to and did provide raw data of a factual nature upon which decisions could be made. Such reports are not generally considered part of the decisional process. See *Vaughn v. Rosen*, 173 U.S. App.D.C. 187, 196, 523 F.2d 1136, 1145 (1975).

The appraisal contains no recommendations as to what lease terms should be negotiated or agreed to by the GSA. Instead it sets forth information, that is to say, values, which are regarded by the Court as factual in this context. These facts, once ascertained by the appraiser, placed a ceiling on the rent, by reason of the provisions of the Economy Act, 40 U.S.C. § 278a. So long as the rent paid was within that which the statute authorizes based on the appraised values, the GSA could engage in any contract with the landlord to which it was led as a result of arms length negotiations.

This is not a case involving the notes of a negotiator's assistant as to what counter offers he recommends should be made. Rather, it represents the professional conclusion as to value of a skilled expert appraiser. In *Benson v. General Services Administration*, 289 F.Supp. 590 (W.D.Wash. 1968), *aff'd.* 415 F.2d 878 (9th Cir. 1969), disclosure of an appraisal was released under the rubric that it was "factual material rather than documents which comprise the administrative reasoning process of government." (Quoted from 415 F.2d at 880). A similar view of an appraisal was found in *Tennessean Newspapers, Inc. v. F. H. A.*, 464 F.2d 657 (6th Cir. 1972). See also, *Philadelphia Newspapers, Inc. v. H. U. D.*, 343 F.Supp. 1176 (E.D.Pa.1972), declining to hold that the figures of an appraiser are "part of the decision making process."

It must be noted that no estoppel will arise against the United States by reason of the findings or opinions of GSA's appraiser, nor is the Government "bound" in the traditional sense that a private party to litigation might be bound, by any of the concepts, findings or theories employed by the appraiser. This appraisal in the possession of the landlord has no value to it except as information.

There is a total failure of proof on the trial record before me that the Government would suffer any detriment, loss or inhibition of its decision-making or negotiating capacity as a result of the disclosure in 1979 of this 1971 appraisal. The rental amount was set in 1971 for a term of 20 years, and release of the fair market value figures of 1971 at this late date cannot, at the present time, possibly compromise the Government's position. There is no factual basis for the contention that negotiations of operating cost escalations or tax escalations would be adversely affected by revelation of any of the material in the appraisal. The provisions in the lease with respect to these items are complex, and need not be quoted in full nor paraphrased for purposes of this decision. The fact is that actual experience, rather than an appraiser's estimates made in 1971 will be the basis for these adjustments. These adjustments will be negotiated at arms length, and failing agreement, will be adjudicated administratively. The professional opinion comprised in this appraisal may have been viewed as an essential factual element in the decision-making context in 1971, but it clearly was not the type of policy-directed commentary or advice generated within an agency which is intended to be protected by the exemption.

■ The information in the appraisal is dated and stale. It is too remote in time from present day land and building values for its disclosure to harm the Government by setting a floor on any offers or negotiations now or in the future for additional space in the same or a comparable building, should the Government desire additional space. Indeed the GSA concedes that if any additional space in the building were to be leased at this time, or in the future, a new appraisal would be required to be made as of current date. While such new negotiations were ongoing, exemption of the new appraisal would seem appropriate. That is not the case.

It seems to be conceded that the Government has no present plans to rent any addi-

tional space from this landlord, or in any comparable building in the immediate vicinity. There is also no factual basis for the Government's contention that these dated and stale figures, generated before the building was even built, would place the Government at any disadvantage in negotiating the purchase of the ECOM building if the Government should ever want to buy it. The Government has no present intentions of buying the ECOM office building, and should it do so, its sovereignty allows acquisition by fiat, at a price fixed by a court.

Plaintiffs seek to draw a distinction between the protection of the Government's internal deliberative processes intended to be protected by Exemption 5 of FOIA, and the argument that release of such materials would place the Government at a competitive disadvantage in future negotiations with these plaintiffs or others in the market place. We need not reach this point, for, as noted previously, the Government has failed to discharge the statutory burden which it must meet in order to suppress disclosure.

The GSA has submitted a number of unreported decisions in the district court, protecting the federal bureaucracy from specific disclosures. Each of these decisions depend on the facts of the particular case. Some of the cases involve appraisals protected where sales or lease negotiations, either for the specific property, or essentially comparable property, were ongoing, and where disclosure might impair the processes of competitive bidding or arms length negotiation, or might invite collusion among bidders.

Disclosure, not secrecy, is the dominant object of the Act. *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Insofar as concerns the transactions of GSA as a lessee of real property, there are positive virtues to letting in the sunshine, which was the initial purpose of the FOIA. Unfounded suspicions seem to attach to most Government activities in this post-Watergate era, and if the underlying facts from which leases were negotiated are to be held in secret unnecessarily and forever, the purpose of the statute would not be served. Those not favoring disclosure had best address themselves to Congress.

If, as this Court regards it, the issue is so clear as indicated above, and the equities so strongly in favor of disclosure, one might wonder why the GSA is so determined in its resistance against disclosure, and might view with equal wonderment the strenuous efforts by plaintiffs to gain access to this stale appraisal. We do know that there is litigation pending between the parties. Whatever the actual issues in that litigation, which was not part of the record here, if there is a showing the appraisal would be relevant or admissible as evidence in that case, or might lead to evidence which is relevant and admissible, it would seem to be accessible by pre-trial discovery. The lease will be regulated by the parol evidence rule, and the 1971 factual understanding of Mr. McCabe, not communicated to plaintiffs will neither bind nor estop the GSA.

All other contentions raised in the pleadings and not dealt with specifically herein are assumed to have been abandoned or satisfied by agreement of the parties. The foregoing constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 52(a), F.R.Civ.P.

Settle a final judgment on notice.