4 A.3d 585

PAUL TRACTENBERG, PLAINTIFF–APPELLANT/CROSS–RE-
SPONDENT, v. TOWNSHIP OF WEST ORANGE, DEFEN-
DANT–RESPONDENT/CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 12, 2009—Decided September 16, 2010.

356

Before Judges FISHER, SAPP–PETERSON and ESPINOSA.

*Richard Gutman* argued the cause for appellant/cross-respondent.

*Mark Y. Moon* argued the cause for respondent/cross-appellant (*Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C.,* attorneys; *Richard D. Trenk,* of counsel and on the brief; *Mr. Moon,* on the brief).

The opinion of the court was delivered by

SAPP–PETERSON, J.A.D.

In this appeal by plaintiff, Paul Tractenberg, and cross-appeal by defendant, Township of West Orange ("West Orange" or "Township"), we are presented with an issue of first impression, whether property appraisals performed by a private appraiser at the behest of the West Orange Council fall within the deliberative process exemption of the Open Public Records Act (OPRA), *N.J.S.A.* 47:1A–1 to –13. Five months before the Supreme Court decided *Education Law Center v. New Jersey Department of Education,* 198 *N.J.* 274, 966 *A.*2d 1054 (2009), the trial court determined that OPRA's deliberative process exemption applied to those portions of the appraisals that were not purely factual and ordered the release of a portion of the requested appraisals. The court also ruled that the appraisals were not protected from full disclosure under the attorney work product doctrine or on the basis of attorney-client privilege.

We hold that under *Education Law Center*, the appraisals are not subject to the deliberative process exemption because (1) they have not been used in the "decision making process" and (2) their disclosure will not "reveal deliberations that occurred during [the decision making process]." *Id.* at 280, 966 *A.*2d 1054. We therefore reverse the October 28, 2008 and January 9, 2009 orders, to the extent those orders only granted the partial release of the appraisals, and order their complete release. We otherwise affirm.

The impetus for the underlying litigation surrounds a 185–acre parcel of land in West Orange purchased in 1986 by West Essex Highlands, Inc. (WEHI). Approximately sixty-five acres have been developed with condominiums and a detention basin. The remaining 120 acres known as the Highlands represent the largest privately-owned, undeveloped real estate in West Orange and have been described as "the unique, visually prominent, and environmentally significant ridgeline and associated east face of the Second Watchung Mountain." The entire area of the property falls within a designated residential zone.

Since 2000, WEHI and West Orange have been embroiled in litigation over the number of homes that are to be built within the Highlands and the procedures for removing trees. In 2004, the parties entered into a "Developer's Agreement" that required WEHI to donate twenty-five acres to West Orange, and in exchange, West Orange agreed to rezone the remaining ninety-five acres to permit WEHI to develop the acreage at double the previously-permitted density. Plaintiff is the President of We Care, a group of community activists seeking preservation of the Highlands. They sought to preserve the area as open space and communicated their opposition to any development to West Orange. In response to a communication from plaintiff, West Orange Mayor John F. McKeon wrote to plaintiff on December 2, 2005. The letter essentially provided an overview of West Orange's efforts to preserve the Highlands as open space and expressed the mayor's preference that there be the "least intru-

sive use and development" of the Highlands. Mayor McKeon's letter also advised that:

> the market value of this property is approximately 30 million dollars without considering its potential value to the owner, fully developed. The market value has been extrapolated from our last appraisal for the Township's western 52 acres protected, which at $250,000 per acre. [sic] The purchase of the [Highlands] property by [West Orange] is prohibitive as we would be unable to raise the funds to do so.

Three weeks later, Mayor McKeon authored a column in West Orange's local newspaper entitled "Point of View," reiterating that to acquire the Highlands "at a minimum . . . will cost the taxpayers $30 million" and "property acquisition is unrealistic and it is outright deceptive to contend otherwise." [1]

Notwithstanding the opinions expressed by the mayor, the Township's Director, Department of Planning and Development, Susan Borg, hosted a meeting on February 26, 2006, at which plaintiff, township residents, environmental protection groups, including the Sierra Club and the West Orange Open Space Commission, and the township engineer were in attendance. According to Borg, the Township

> wanted to get as many groups together to see where we could find money from—since we all assumed it was going to be a lot of money, and much, much more money th[a]n we bought properties [at] in the past, that we wanted to get a feeling for what kind of money each of the groups could—could commit to this piece of property. And no one made a commitment, but everyone agreed that they would certainly go out and look for the . . . money.

The West Orange Council subsequently adopted Resolution # 86–06, which provided in pertinent part:

> **WHEREAS,** approximately 120.5 acres of vacant land currently exists at Block 179, Lot 32; and
>
> **WHEREAS,** the Township desires to investigate such property for potential acquisition in accordance with the Green Acres Program administered by the State of New Jersey, Department of Environmental Protection; and
>
> **WHEREAS,** the Green Acres Program requires two (2) appraisals of the subject property; and

---

[1] This article was not considered by the court during the hearing the court conducted on plaintiff's prerogative writs action. The court ruled the document was inadmissible hearsay.

> **WHEREAS,** Tom Rodriguez Associates and Blau Appraisal Company have performed similar appraisals regarding other parcels on prior occasions; and
>
> **WHEREAS,** the Township Council desires to investigate the potential acquisition of the subject property;
>
> **NOW, BE IT HEREBY RESOLVED,** by the Township Council of the Township of West Orange that the Township Council authorizes the Mayor to retain Blau Appraisal Company and Tom Rodriguez Associates at a rate not to exceed $5,000 each to perform appraisals of the property located at Block 179, Lot 32 consisting of approximately 120.5 acres[.]

In October 2006, following the completion of the appraisals, plaintiff requested copies of the reports. Citing attorney-client privilege and attorney work product, the appraisals were not released. The debate about the Township's acquisition of the Highlands continued without resolution. In September 2007, plaintiff once again sought access to the appraisals. The Township attorney refused to release the appraisals, citing attorney work product and OPRA's deliberative process:

> OPRA does not cover "inter-agency or intra-agency advisory, consultative or deliberative material." *N.J.S.A.* 47:1A–1.1. Also known as the "deliberative process privilege[,]" this exclusion is meant specifically to shield communication "received by a decision maker from public [disclosure]." *Gannett New Jersey Partners, LP v. County of Middlesex,* 379 *N.J.Super.* 205, 219 [877 *A.*2d 330] (App.Div.2005). As the appraisals were received (1) prior to the decision to exercise eminent domain and (2) contained opinions, recommendations and advi[c]e, the appraisal documents qualify under the deliberative process privilege.

On November 30, 2007, plaintiff filed a verified complaint seeking the entry of an order to show cause for the release of copies of the appraisals pursuant to OPRA and the common law right of access to public records. The court entered an order directing that the matter proceed as a summary proceeding. The Township filed its answer and, shortly thereafter, filed its brief in opposition to the order to show cause. The trial court conducted its summary proceeding over two days in October 2008.

In addition to documentary evidence, the court heard testimony from a number of witnesses, including plaintiff, Borg, Charles Blau, a licensed engineer whose company performed one of the appraisals, and John K. Sayers, the Township's Business Administrator and Police Director. At the conclusion of the hearing, the court orally entered its decision on the record.

The court found that neither the attorney-client privilege nor the attorney work product doctrine applied to prevent disclosure of the appraisals. However, the court was satisfied that OPRA's deliberative process exemption prevented disclosure of those portions of the appraisals that were not purely factual.

As for the common law right of access, the court concluded that the need for confidentiality to protect the Township's deliberative process outweighed plaintiff's need for access, and decided that the non-factual portions of the appraisals were protected. The court then ordered defendant to redact "[a]ny discussion of how they arrived at the market value as opposed to those things which are clearly factual. . . ."

On October 24, 2008, the court ordered the release to plaintiff of "a portion of the requested appraisals," but "any indication of market value or the analysis that leads to the conclusion of market value" should be "blacked out." Plaintiff moved for reconsideration, and a hearing was held on December 18, 2008. At the hearing, plaintiff argued that because defendant was unwilling to comply with the order, the trial court should do the redacting. On January 9, 2009, the trial court ordered that plaintiff receive additional portions of the appraisals. On January 23, 2009, plaintiff appealed the trial court's denial of access to the entirety of the appraisals. On January 29, 2009, defendant cross-appealed portions of the October 24, 2008 and January 9, 2009 orders.

On appeal, plaintiff raises the following points for our consideration:

POINT I

OPRA EXPRESSLY REQUIRES ITS EXEMPTIONS TO BE CONSTRUED IN FAVOR OF PUBLIC ACCESS AND PLACES THE BURDEN OF PROOF ON THE TOWNSHIP.

POINT II

NEW JERSEY HAS FAVORED PUBLIC ACCESS TO GOVERNMENT APPRAISALS.

POINT III

OPRA'S DELIBERATIVE PROCESS EXEMPTION DOES NOT APPLY TO THE APPRAISALS AT ISSUE.

A. THE APPRAISALS ARE NOT "DELIBERATIVE" BECAUSE THE TOWNSHIP DID NOT EVEN ATTEMPT TO PROVE THAT THE APPRAISALS REVEAL DECISION–MAKING DELIBERATIONS.

B. THE APPRAISALS ARE NOT "PRE–DECISIONAL" BECAUSE THE TOWNSHIP DID NOT EVEN ATTEMPT TO PROVE THAT THEY WERE USED IN THE POLICY–MAKING PROCESS.

C. BECAUSE NEW JERSEY REQUIRES PUBLIC DISCLOSURE OF APPRAISALS IF A CONDEMNATION ACTION IS FILED, APPRAISERS WOULD NOT BE CHILLED BY DISCLOSURE TO TRACTENBERG.

*POINT IV*

OPRA'S OTHER EXEMPTIONS DO NOT APPLY TO THE APPRAISALS AT ISSUE.

A. ATTORNEY–CLIENT PRIVILEGE DOES NOT APPLY BECAUSE [THE] TOWNSHIP FAILED TO SATISFY ITS BURDEN OF PROOF THAT THE APPRAISALS WERE COMMUNICATED (1) "IN THE COURSE OF [A LAWYER–CLIENT] RELATIONSHIP AND (2) "IN PROFESSIONAL CONFIDENCE."

B. SUFFICIENT EVIDENCE EXISTED FOR THE TRIAL COURT'S FACTUAL FINDING THAT THE APPRAISALS WERE NOT PREPARED IN ANTICIPATION OF LITIGATION, AND, THUS, THE WORK PRODUCT DOCTRINE DOES NOT APPLY.

In its cross-appeal, West Orange raises the following points:

*POINT I*

THE TRIAL COURT PROPERLY CONCLUDED THAT THE APPRAISALS QUALIFIED UNDER THE ADVISORY, CONSULTATIVE AND DELIBERATIVE EXCEPTION UNDER THE OPEN PUBLIC RECORDS ACT.

A. THE TRIAL COURT PROPERLY FOUND THAT THE APPRAISALS WERE PRE–DECISIONAL AND THIS FINDING OF FACT IS ENTITLED TO DEFERENCE ON APPEAL.

B. THE TRIAL COURT'S DETERMINATION THAT THE APPRAISALS WERE DELIBERATIVE IN NATURE IS CONSISTENT WITH THE GOVERNING CASE LAW AND THE NEED TO PROVE THAT CERTAIN COMPONENTS REVEAL DELIBERATIONS APPLY ONLY TO THE FACTUAL PORTIONS OF THE APPRAISALS WHICH WERE ALL PROVIDED TO TRACTENBERG.

*POINT II*

THE TRIAL COURT ERRED IN REJECTING THE TOWNSHIP'S ARGUMENT THAT THE APPRAISALS QUALIFIED UNDER THE WORK PRODUCT PRIVILEGE.

*POINT III*

THE TRIAL COURT ERRED IN REJECTING THE TOWNSHIP'S ARGUMENT THAT THE APPRAISALS QUALIFIED UNDER THE ATTORNEY CLIENT PRIVILEGE.

*POINT IV*

THE TRIAL COURT FAILED TO EXAMINE WHETHER THE APPRAISALS FELL WITHIN THE OPRA EXEMPTION FOR DOCUMENTS GIVING AN ADVANTAGE TO COMPETITORS OR BIDDERS.

*Rule* 4:67–1(a) (the Rule) permits the summary disposition of matters which, by rule or statute, may be resolved through a summary proceeding. Proceedings instituted under the Rule are commenced by the filing of an order to show cause supported by a verified complaint. *R.* 4:67–2(a). The court thereafter conducts an initial hearing and, if "satisfied with the sufficiency of the application, [it] shall order the defendant to show cause why final judgment should not be rendered for the relief sought." *Ibid.*

On the return date of the order to show cause, if there is an objection to the court conducting a trial on the pleadings and affidavits and the court is satisfied that "there may be a genuine issue as to a material fact, the court shall hear the evidence as to those matters which may be genuinely in issue, and render final judgment." *R.* 4:67–5. At the conclusion of the proceedings, the court must make findings of fact. *MAG Entm't, LLC v. Div. of Alcoholic Beverage Control,* 375 *N.J.Super.* 534, 551, 868 *A.*2d 1067 (App.Div.2005). On appeal, those findings will not be disturbed unless we are convinced that " 'they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.' " *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974) (quoting *Fagliarone v. Twp. of No. Bergen,* 78 *N.J.Super.* 154, 155, 188 *A.*2d 43 (App.Div.1963)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

In the present matter, OPRA expressly provides that actions instituted in Superior Court challenging a decision withholding access to government records shall proceed in a "summary or expedited manner." *N.J.S.A.* 47:1A–6. Therefore, the trial court properly conducted a summary proceeding to resolve the dispute.

I.

With the enactment of OPRA, the Legislature sought "to insure that government records, unless exempted, are readily accessible to citizens[.]" *Mason v. City of Hoboken,* 196 *N.J.* 51, 57, 951 *A.*2d 1017 (2008). Thus, OPRA maximizes public awareness about governmental affairs and minimizes the "evils inherent in a secluded process." *Educ. Law Ctr., supra,* 198 *N.J.* at 284, 966 *A.*2d 1054 (quoting *Mason, supra,* 196 *N.J.* at 64, 951 *A.*2d 1017).

Under OPRA, all government records are subject to public access unless the records fall within at least one of its twenty-one exemptions. *N.J.S.A.* 47:1A–1. Included among the government records to which the exemption applies are "interagency or intra-agency advisory, consultative or deliberative material." *N.J.S.A.* 47:1A–1.1. The language of this exemption "has been understood to encompass the common law deliberative process privilege." *Educ. Law. Ctr., supra,* 198 *N.J.* at 284, 966 *A.*2d 1054 (citing *Fisher v. Div. of Law,* 400 *N.J.Super.* 61, 74, 946 *A.*2d 53 (App. Div.2008); *Gannett N.J. Partners, LP v. County of Middlesex,* 379 *N.J.Super.* 205, 219, 877 *A.*2d 330 (App.Div.2005)).

The deliberative process privilege permits "the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Liquidation of Integrity Ins. Co.,* 165 *N.J.* 75, 83, 754 *A.*2d 1177 (2000). The rationale underlying this exemption is two-fold: first, the exemption protects "free and open comments" within government agencies, *Kaiser Aluminum & Chem. Corp. v. United States,* 141 *Ct.Cl.* 38, 157 *F.Supp.* 939, 945 (1958), and second, it prevents the release of proposed policies before they have been fully scrutinized and implemented by the governmental agency, *Jordan v. U.S. Dep't of Justice,* 591 *F.*2d 753, 773 (D.C.Cir.1978).

Our Supreme Court discussed the deliberative process privilege at length in *Integrity, supra,* 165 *N.J.* at 83–86, 754 *A.*2d 1177.

There, the New Jersey Insurance Commissioner (Commissioner) invoked the deliberative process privilege during the course of litigation surrounding the insolvency and liquidation of Integrity Insurance Company (Integrity). *Id.* at 81, 754 *A.*2d 1177. Specifically, there was opposition to the Commissioner's proposed Final Dividend Plan, the plan designed to "wind up Integrity's affairs." *Id.* at 80, 754 *A.*2d 1177. A number of re-insurers opposed the plan submitted to the court and, during the course of discovery, sought the disclosure of certain documents. *Id.* at 81, 754 *A.*2d 1177. The Commissioner prepared a privilege log for more than 100 documents and asserted both the deliberative process and work product privileges as reasons for the refusal to comply with the discovery requests. *Ibid.*

Addressing the deliberative process privilege, the Court traced the exemption's firm roots in federal jurisprudence before outlining a two-step test for its application. *Id.* at 83–86, 754 *A.*2d 1177. First, the document must be "pre-decisional," meaning it was "generated before the adoption of an agency's policy or decision." *Id.* at 84, 754 *A.*2d 1177. Second, the document must be "deliberative in nature, containing opinions, recommendations, or advice about agency policies." *Id.* at 84–85, 754 *A.*2d 1177. The Court noted that under this second prong, "[p]urely factual material that does not reflect deliberative processes is not protected." *Id.* at 85, 754 *A.*2d 1177. The government, as the asserter of the privilege, has the burden of demonstrating its application. *Ibid.* However, once the privilege is successfully invoked, a presumption of nondisclosure arises and the burden shifts to the litigant to demonstrate a "substantial or compelling need" for the documents. *Ibid.* Factors to consider when analyzing whether the litigant has sustained the burden of overcoming the privilege include: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* at

85–86, 754 *A*.2d 1177 (citing *Federal Trade Comm'n v. Warner Commc'ns, Inc.,* 742 *F*.2d 1156, 1161 (9th Cir.1984)).

*Integrity,* however, did not address how to determine when material is "deliberative" within the meaning of the second prong of its test. That question was answered nine years later by the Court in *Education Law Center, supra,* 198 *N.J.* at 288, 966 *A*.2d 1054. The plaintiffs, who were involved in litigation with the Department of Education (DOE) over a revised state funding formula for public education, filed an OPRA request in 2006 seeking disclosure of documents "related to the ... estimate, review and/or analyses of the cost of providing a thorough and efficient education undertaken by the Office of School Funding." *Id.* at 281, 966 *A*.2d 1054. DOE released hundreds of documents, some of which contained redactions. *Id.* at 281, 966 *A*.2d 1054. The plaintiffs commenced an action in Superior Court claiming that the redactions violated OPRA and their common law right of access to government documents. *Ibid.* The trial court entered numerous rulings related to the release of the requested documents, including the release of an unredacted copy of a memorandum titled, "Alternative Funding Simulations" (AFS). *Ibid.* On appeal, we affirmed the trial court ruling, concluding that DOE failed to establish that the memorandum constituted deliberative material. *Id.* at 280, 966 *A*.2d 1054. The Supreme Court granted DOE's motion for leave to appeal "to consider the appropriate test for examining the application of deliberative process protection, under OPRA and under a right-of-access analysis, for a document that contains a presentation of data." *Ibid.* The Court specifically focused its inquiry to application of the privilege in the "context of a document containing factual data that has been formatted to create scenarios to assist in an agency's consideration of policy options." *Ibid.*

Consistent with the Court's long history of looking to federal law where there is a dearth of state court decisions interpreting a state statute or rule but there are federal decisions interpreting comparable federal law, the Court turned to federal decisions

interpreting the Freedom of Information Act (FOIA), 5 *U.S.C.* § 552(b), OPRA's federal counterpart, for guidance. *See Hammock by Hammock v. Hoffmann–LaRoche, Inc.,* 142 *N.J.* 356, 369, 662 *A.*2d 546 (1995) (looking to federal law interpreting federal rules of civil procedure to determine when the public should have access to documents filed with a trial court in support of, or in opposition to, motions in civil litigation); *see also Grigoletti v. Ortho Pharm. Corp.,* 118 *N.J.* 89, 97, 570 *A.*2d 903 (1990) (considering federal law as guidance in interpreting New Jersey's Law Against Discrimination). The Court surveyed decisions from the Ninth, Eleventh, and D.C. Circuits interpreting Exemption Five under FOIA and found the approach employed in *Mapother v. Department of Justice,* 3 *F.*3d 1533 (D.C.Cir.1993), most persuasive.

In *Mapother,* the D.C. Circuit focused upon the objective underlying the deliberative process privilege which it concluded is to protect both deliberative material as well as the deliberative process and reasoned that the key inquiry is the relationship between the requested documents and their ability to expose agency deliberations occurring prior to the agency's ultimate decision. *Id.* at 1539. Adopting the D.C. Circuit's approach in *Education Law Center,* our Supreme Court concluded:

[T]he question of what is protected under the deliberative process privilege, incorporated into OPRA as an exemption from the definition of a "government document," must depend, first, on whether the information sought is a part of the process leading to formulation of an agency's decision (not on a simplistic label of "fact" or "opinion,"), and second, on the material's ability to reflect or to expose the deliberative aspects of that process.

[*Educ. Law Ctr., supra,* 198 *N.J.* at 295, 966 *A.*2d 1054.]

The Court held that a document containing factual components is still subject to the deliberative process privilege when "it was used in the decision-making process and its disclosure would reveal the nature of the deliberations that occurred during that process." *Id.* at 299, 966 *A.*2d 1054. The Court reasoned that merely because the documents contained raw, factual data, standing alone, was not dispositive of whether the documents were subject to the deliberative process exemption. *Ibid.*

Applying this test to the documents sought by the plaintiffs, the Court determined the AFS memorandum was protected from disclosure by the deliberative process exemption. *Id.* at 300, 966 *A.*2d 1054. The Court concluded that the AFS memorandum

contained factual data converted into scenarios for the purpose of assisting in the agency's consideration of options. This was not raw, neutral, data. It was manipulated to provide organized information useful to the DOE, specifically for the purpose of aiding the agency in deciding on an aspect of a new funding scheme. It plainly was created during, and used as part of, DOE's deliberative process. As for the second part of the examination for deliberative-process protection, the document must be capable of reflecting what people were thinking and considering during the process of deliberating. This [memorandum], concerning data created specifically to provide information that DOE deemed useful during its decision-making process, shows that persons were using the formatted data for the purposes of ascertaining something to be decided. The document is, therefore, reflective of DOE's deliberations. As such, it is entitled to protection under the deliberative process privilege and, therefore, is exempt from release under OPRA. [*Id.* at 301–02, 966 *A.*2d 1054.]

Here, as noted earlier, the trial court entered its ruling five months before the Court's decision in *Education Law Center* and therefore relied upon reasoning we employed in our decision, which the Court subsequently reversed. *Id.* at 304, 966 *A.*2d 1054. The court first determined that the appraisals were pre-decisional because they "were acquired for the purpose of helping the municipality make a decision." Next, the court ruled that plaintiff was only entitled to receive the "purely factual" portions of the appraisals and listed as examples of the "purely factual" information, "the factual part dealing with comparable[ ]s[,] [w]hat the piece of property is[,]" and "[w]hat the taxes are." The court then concluded that the "opinion of the appraiser" as to the value decided upon is "not factual in nature" and was therefore "covered by the deliberative privilege."

Addressing the first prong under the *Education Law Center* analysis, we are satisfied the Township produced sufficient evidence demonstrating that the appraisals are part of the "decision-making process[.]" *Id.* at 299, 966 *A.*2d 1054. Borg testified that no decision had yet been made, but acknowledged that the appraisals do serve as part of the decision making process. John

Sayers, the Township's Business Administrator and Police Director, also testified that no decision had been made regarding the Township's potential acquisition of the property, but "[t]here have been many meetings and discussions about what to do and how to purchase that property." Sayers further testified that if the Township decides to acquire the Highlands, it will have the current appraisals updated rather than commission new ones.

Testimony from these witnesses, which the trial court credited, satisfied the Township's burden of proving that the appraisals are "a part of the process leading to the formulation of an agency decision" on whether to acquire the Highlands. *Id.* at 295, 966 *A.*2d 1054. Hence, the trial court properly concluded that the appraisals were pre-decisional.

■ Turning to the second prong under the newly amplified law announced in *Education Law Center*, whether a document is entitled to deliberative process protections requires more than a fact versus opinion analysis. *Id.* at 294–95, 966 *A.*2d 1054. Rather, "a court must assess such fact-based documents against the backdrop of an agency's deliberative efforts in order to determine a document's nexus to that process and its capacity to expose the agency's deliberative thought-processes." *Id.* at 299–300, 966 *A.*2d 1054.

Although there are no New Jersey cases interpreting the application of the deliberative process exemption to property appraisals, federal court decisions in at least two jurisdictions have construed FOIA's deliberative process exemption, 5 *U.S.C.* § 552(b)(5), which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[,]" as not exempting property appraisals. In *Tennessean Newspapers, Inc. v. Federal Housing Administration*, 464 *F.*2d 657, 660 (6th Cir.1972), the court noted that property appraisals are not "deliberative" for the purposes of the deliberative process privilege because as "the finished work product of a professional," they are not "documents which comprise the administrative rea-

soning process of the government." In *Dworman Building Corp. v. General Services Administration,* 468 *F.Supp.* 389, 392–93 (S.D.N.Y.1979), the government conceded that the property appraisal at issue did not reflect intra-agency deliberations or policy deliberations. The court found "at most the appraisal was intended to and did provide raw data of a factual nature upon which decisions could be made." *Ibid.* "Such reports are not generally considered part of the decisional process." *Id.* at 393. Similarly, in *Philadelphia Newspapers, Inc. v. Department of Housing and Urban Development of the United States,* 343 *F.Supp.* 1176, 1178 (E.D.Pa.1972), the court, in addressing the scope of the deliberative process privilege, concluded that property appraisals fall outside of the scope of the privilege, reasoning that "the gap between suggested prices and policy recommendations within the protection of executive privilege is unbridgeable."

▪ We reject the Township's contention that only when dealing with purely factual data must a court apply the analysis articulated in *Education Law Center.* The Court made clear that protection afforded under the deliberative process exemption depends upon "whether the information sought is a part of the process leading to the formulation of an agency's decision (*not on a simplistic label of 'fact' or 'opinion'* )[.]" *Educ. Law Ctr., supra,* 198 *N.J.* at 295, 966 *A.*2d 1054 (emphasis added). Consequently, *Education Law Center's* two-part analysis applies to all documents for which the deliberative process exemption is asserted irrespective of whether the documents are factual or opinion. *Ibid.*

Defendant produced no evidence that the appraisals have the potential to "reflect or to expose the deliberative aspects of that process" in satisfaction of the second prong. *Ibid.* Although appraiser Charles Blau testified that all the components of an appraisal are "intertwined," this does not prove that the appraisals had the potential to expose the deliberative aspects of the Township's process of determining whether to acquire the Highlands. Applying the reasoning expressed in the referenced federal decisions, the property appraisals at issue here do not provide policy

recommendations but rather supply raw data and price proposals that may then be manipulated by an agency in making its decision. *Dworman, supra,* 468 *F.Supp.* at 393; *Tennessean Newspapers, supra,* 464 *F.2d* at 660; *Phila. Newspapers, supra,* 343 *F.Supp.* at 1178.

Likewise, the appraisals are factually distinguishable from the AFS memorandum the Court found protected under the deliberative process exemption in *Education Law Center*. In addition to providing raw data, the AFS memorandum contained recommendations designed to assist the DOE in its deliberative process. By contrast, there is no indication in the record that the property appraisals here contain any recommendation as to whether the Township should acquire the Highlands. Rather, the appraisals contain raw, neutral data and an ultimate opinion as to the value of the property. Therefore, the appraisals do not have the "capacity to expose the [Township's] deliberative thought-processes" because they are "at most ... intended to ... provide raw data of a factual nature upon which decisions could be made." *Dworman, supra,* 468 *F.Supp.* at 393. Consequently, plaintiff is entitled to unredacted copies of the two appraisals.

## II.

We next address the Township's cross-appeal. In light of our determination that the deliberative process exemption does not apply to prevent the disclosure of the appraisals, the Township's arguments that the court erred in determining that the additional asserted privileges do not apply to prevent disclosure of the appraisals are not moot as urged by plaintiff.

The Township argues the trial court ignored "overwhelming evidence in the record which illustrates a contentious and litigious relationship between the Township and WEHI which sufficiently provided an objectively reasonable basis for the Township to anticipate litigation should efforts to acquire the [p]roperty proceed." The Township maintains that the appraisals are "critical"

to its ability to "valu[e] the [p]roperty for possible acquisition with the full understanding that litigation was not possible, but likely."

The work product privilege offers qualified protection from disclosure of documents "prepared in anticipation of litigation rather than in the ordinary course of business." Pressler, *Current N.J. Court Rules*, comment 4 on *R.* 4:10–2(c) (2010). The privilege endeavors to protect an "attorney's mental impressions, conclusions, opinions or legal theories." *Ibid.* A document is "prepared in anticipation of litigation if the 'dominant purpose' in preparing the document was concern about potential litigation and the anticipation of litigation was 'objectively reasonable.'" *Miller v. J.B. Hunt Transp., Inc.,* 339 *N.J.Super.* 144, 150, 770 *A.*2d 1288 (App.Div.2001); *see also Rivard v. Am. Home Prods., Inc.,* 391 *N.J.Super.* 129, 155, 917 *A.*2d 286 (App.Div.2007). However, a document may "be found to have been prepared in anticipation of litigation even though litigation [has] not been commenced or even threatened when the document was prepared." *Id.* at 149, 770 *A.*2d 1288. The reasonableness of an attorney's anticipation of litigation is analyzed "objectively by considering the factual context in which materials are prepared, the nature of the materials, and the expected role of the lawyer in ensuing litigation." *Ibid.*

Here, the trial court considered these legal principles before it determined that the work product privilege did not apply. The court observed that the Township produced "nothing from which [the court could] deduce that this document was prepared in anticipation of litigation." The Township offered only argument before the trial court and here that a "contentious history between the Township and WEHI" existed. Because the posture of the proceeding was summary in nature rather than a summary judgment proceeding, the Township, in the absence of competent evidence, was not entitled to an inference that a contentious history existed between it and WEHI. *O'Connell v. N.J. Mfrs. Ins. Co.,* 306 *N.J.Super.* 166, 172, 703 *A.*2d 360 (App.Div.1997), *appeal dismissed,* 157 *N.J.* 537, 724 *A.*2d 799 (1998). Nonetheless, even if this contention is undisputed and the Township's anticipation of

litigation objectively reasonable, the record is devoid of any evidence demonstrating that the "dominant purpose" of preparing the appraisals was a concern about potential litigation.

The Township next argues that the trial court failed to "fully examine the facts in the record against the governing elements of the attorney[-]client privilege" before it incorrectly determined this privilege did not apply to prevent the disclosure of unredacted copies of the appraisals. The Township maintains that the privilege is applicable because the appraisers, as its agents, performed the appraisals on behalf of the Township and communicated the results of the appraisals to its attorney in professional confidence.

OPRA exempts "any record within the attorney-client privilege" from its definition of a "government record." *N.J.S.A.* 47:1A–1.1. The attorney-client privilege in New Jersey is statutory. *See* *N.J.S.A.* 2A:84A–20. The purpose of the attorney-client privilege is "to encourage clients to make full disclosure to their attorneys," *Macey v. Rollins Envtl. Servs.*, 179 *N.J.Super.* 535, 539, 432 *A.*2d 960 (App.Div.1981), because such confidentiality is an "indispensable ingredient in our legal system." *In re Grand Jury Subpoenas*, 241 *N.J.Super.* 18, 28, 574 *A.*2d 449 (App.Div.1989).

To qualify for the privilege, a party must show that there was a confidential communication "between lawyer and his client in the course of that relationship and in professional confidence[.]" *N.J.R.E.* 504(1). Confidential communications are only those "communications which the client either expressly made confidential or which he could reasonably assume under the circumstances would be understood by the attorney as so intended." *State v. Schubert*, 235 *N.J.Super.* 212, 221, 561 *A.*2d 1186 (App.Div.1989), *certif. denied*, 121 *N.J.* 597, 583 *A.*2d 302 (1990). "[A] mere showing ... the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." *Id.* at 220–21, 561 *A.*2d 1186 (quoting E. Cleary, *McCormick on Evidence* § 91 (2d ed. 1972)).

The privilege extends to communications between a public body and the attorney retained to represent it. *In re Grand Jury, supra,* 241 *N.J.Super.* at 28, 574 *A.*2d 449. It also extends to "the necessary intermediaries and agents through whom the communications are made." *State v. Kociolek,* 23 *N.J.* 400, 413, 129 *A.*2d 417 (1957). Such "necessary intermediaries" have been held to include a psychiatrist retained by defense counsel, *ibid.,* arson experts hired by defense counsel, *State v. Melvins,* 155 *N.J.Super.* 316, 322–23, 382 *A.*2d 925 (App.Div.1978), *certif. denied,* 87 *N.J.* 320, 434 *A.*2d 72 (1981), a handwriting expert employed by defense counsel, *State v. Mingo,* 77 *N.J.* 576, 584, 392 *A.*2d 590 (1978), and an engineering firm hired as a consultant for litigation assistance, *Conforti & Eisele, Inc. v. Division of Building & Construction,* 170 *N.J.Super.* 64, 69–70, 405 *A.*2d 487 (Law Div.1979).

The Township argues that because the appraisers are "agents of the Township," their appraisals are "documents of the Township" entitled to protection under the attorney-client privilege. Plaintiff counters that the appraisals were not authorized or ordered by the Township attorney, and thus they were not created in the course of an attorney-client relationship. Plaintiff cites *United States v. Robinson,* 121 *F.*3d 971, 975 (5th Cir.1997), *cert. denied,* 522 *U.S.* 1065, 118 *S.Ct.* 731, 139 *L.Ed.*2d 669 (1998), also cited by the trial court in its decision, for the proposition that "documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." We agree.

The record unequivocally shows that the Township Council, not the Township attorney, authorized the appraisals. As Borg testified, the appraisals were ordered to "see how much [the property] was worth" and thus aid in the council's consideration of whether the Township should acquire the Highlands. The mere fact that the completed appraisals were addressed to the Township attorney did not establish an attorney-client relationship.

The Township produced no evidence before the trial court that there was any confidential communication between the Township

Council and the Township attorney relating to the appraisals. The decision to order the appraisals was reached in a public forum and, according to the testimony of plaintiff during the summary proceeding, the Township Council adopted the resolution to order the appraisals at his urging during a Township Council meeting, and the Township acquiesced to this request. It is doubtful that elected officials would acquiesce to a request for appraisals from a member of the public in a public forum and then adopt a resolution in furtherance of that request, with the intention that the results of the appraisals would be kept from the public.

Moreover, even assuming the appraisals arose out of an attorney-client relationship between the Township attorney and the Township Council, the parties had no reasonable expectation that the appraisals would remain confidential. *See N.J.S.A.* 20:3-6; *see also State, Comm'r of Transp. v. Testa,* 247 *N.J.Super.* 335, 338, 589 *A.*2d 190 (App.Div.1991); and *R.* 4:73-1. Therefore, the trial court's finding that the attorney-client privilege did not apply is supported by the record.

The Township also argues that the trial court erred by failing to examine the OPRA exemption for "information which, if disclosed, would give an advantage to competitors or bidders," *N.J.S.A.* 47:1A-1.1, a contention raised in defendant's brief in opposition to the order to show cause but not raised at the trial court hearing. Plaintiff contends the Township abandoned this argument because, when asked by the trial court "what privileges are you now claiming," it failed to mention this exception. Plaintiff further notes that the Township also failed to raise this exception during summation.

It is well-settled that appellate courts will generally "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available," unless the issues relate to jurisdiction or substantially implicate public interest. *Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973). However, raising the issue in a brief sufficiently preserves the issue on appeal. *See Nat'l Westminster*

*Bank N.J. v. Anders Eng'g, Inc.*, 289 *N.J.Super.* 602, 609–610, 674 *A.*2d 638 (App.Div.1996) (finding defendant sufficiently preserved a defense for appellate review where that defense was raised in its trial level opposition brief). As this contention was raised in the Township's brief in opposition to the order to show cause, this contention is properly before us.

In support of the application of the competitive advantage exemption, the Township relies upon a Government Records Council decision, *Murray v. Twp. of Warren,* GRC Complaint No. 2006–169 (February 27, 2008), included in its appendix, to argue that "[t]he disclosure of the appraisals prior to the formal commencement of negotiations and/or eminent domain proceedings, will place the Township at a substantial disadvantage." We disagree.

In *Murray,* the Government Records Council denied the complainant's access to appraisals because the complainant was the attorney of the property owner with whom the township was negotiating for the property's purchase. *Murray, supra,* Complaint No. 2006–169 at 7. Based on these facts, the Council concluded,

> The records responsive to this request represent a part of the negotiation phase that gives a party interested in buying or selling a property a level of bargaining power.... The Township of Warren is using the records to substantiate its offer of purchase to the Complainant's client. Disclosure of the records requested could greatly hinder the Township's position in the negotiation process by making public the price range at which the Township is willing to obtain the property and could be used to start a bidding war between private companies.
>
> [*Id.* at 7–8.]

In our view, application of this reasoning to shield appraisals that have not been utilized in actual negotiations would defeat the purpose of OPRA, which represents this state's "longstanding public policy favoring ready access to most public records." *Bart v. City of Paterson Hous. Auth.,* 403 *N.J.Super.* 609, 617, 959 *A.*2d 1227 (App.Div.2008), *certif. denied,* 198 *N.J.* 316, 966 *A.*2d 1080 (2009). As such, "the court must always maintain a sharp focus on the purpose of OPRA and resist attempts to limit its scope, absent a *clear showing* that one of its exemptions or

exceptions incorporated in the statute by reference is applicable to the requested disclosure." *Asbury Park Press v. Ocean County Prosecutor's Office,* 374 *N.J.Super.* 312, 329, 864 *A.*2d 446 (Law Div.2004) (emphasis added); *see also Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp.,* 183 *N.J.* 519, 535, 874 *A.*2d 1064 (2005).

Here, it cannot be said that the competitive advantage exemption clearly applies to these facts. Unlike in *Murray,* the Township has not initiated negotiations with WEHI to purchase the Highlands, nor have they demonstrated that such negotiations are probable any time in the near future. The Township has held the appraisals for over two years, and yet the record indicates that no decision regarding the Highlands has been made. To contend that the mere potential for future negotiations, without a strong showing that negotiations are probable, satisfies the OPRA competitive advantage exemption "subverts the broad reading of OPRA as intended by the Legislature." *Times of Trenton, supra,* 183 *N.J.* at 535, 874 *A.*2d 1064. We therefore reject defendant's argument that OPRA's competitive advantage exemption applies.

To summarize, we reverse those portions of the trial court orders of October 28, 2008 and January 9, 2009 directing the release of the redacted copies of the appraisals. We affirm the remainder of the trial court's ruling that the other OPRA exemptions asserted by the Township are inapplicable.

Affirmed in part, reversed in part, and remanded for entry of an order directing the release of unredacted copies of the appraisals. We do not retain jurisdiction.