**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2340-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CONRAD R. SIPA,

     Defendant-Appellant.

_____

Submitted September 9, 2025 – Decided September 26, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 17-02-0211.

Robert Carter Pierce, attorney for appellant (Jeff Thakker, of counsel; Robert Carter Pierce, on the briefs).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Supervising Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Conrad R. Sipa appeals a March 4, 2024 Law Division order issued by Judge David M. Fritch denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Following a five-day jury trial, defendant was convicted of first-degree murder and related offenses and sentenced to an aggregate forty-five-year prison term. He now contends his trial lawyer rendered ineffective assistance by failing to investigate, prepare, and present a voluntary intoxication defense; by giving improper advice regarding defendant's right to testify; and by failing to file motions concerning impeachment evidence. Judge Fritch rejected these contentions without holding an evidentiary hearing, issuing a thirty-seven-page written opinion. Defendant argues that he has established a prima facie case of ineffective assistance of counsel entitling him to an evidentiary hearing to scrutinize counsel's trial strategy. We disagree. An evidentiary hearing is not necessary to supplement the present record, which provides ample explanation for defense counsel's strategic decisions. Reviewing the record in light of the governing legal principles, we affirm.

I.

The procedural history leading to the trial and the pertinent facts regarding the murder are thoroughly recounted in our direct appeal opinion and need not be repeated here. See State v. Sipa, No. A-5252-18 (App. Div. Aug. 6, 2021).

It is sufficient to note that defendant killed his friend, Richard Doody, during an altercation at the victim's vacation home on Long Beach Island. Defendant left the crime scene around 12:30 a.m., drove home approximately 60-70 miles, then returned to the Long Beach Island residence around 8:00 a.m. to remove and destroy evidence.

When the victim's wife failed to receive a response to her text messages, she called the Long Beach Township police department to request a wellness check. Police arrived at the home just before 5:00 p.m. They found no sign of forced entry. Upon entering the house, they discovered Doody's body wrapped in a green blanket on the floor in the living room near an armchair in front of a window covered with vertical blinds. Doody had severe trauma to his head, which was covered with blood, and a gaping hole in the front of his neck. There were broken ceramic pieces on the victim's blood-stained shirt and on the chair. There were bloodstains on the back, seat, and arms of the chair, and blood splatter on the wall and the vertical blinds behind the chair. Police determined that Doody's phone and iPad were missing.

Before trial, counsel provided defendant a detailed case assessment letter discussing the strengths and weaknesses of the State's case. The letter includes

3

a thorough discussion of possible defenses, including intoxication. Counsel candidly explained in pertinent part:

> The problem that we will encounter with this [intoxication] defense, however, is that there are no objective facts establishing intoxication, while there are significant facts establishing the opposite. It is undisputed that the defendant returned home to Colts Neck after the incident, and was able to safely arrive there, which is one factor the Court will [weigh] heavy in its analysis of whether to even charge the jury on this offense. In addition, if the prosecution is able to establish that you attempted to clean the scene on Saturday, rather than when you returned on Sunday, this will establish a level of conscious, deliberate action that negates the requisite degree of prostration. The only evidence about defendant's intoxication will need to come from you and again from Masone, who can provide information about your inability to recall significant events. But the presence of alcohol, and even proof that he ingested a sufficient amount to be deemed drunk, may not be enough - the proofs still need to establish that his drinking produced a prostration of faculties to the extent that a jury could conclude that he did not possess the willfulness, deliberation, and premeditation necessary to commit purposeful and knowing murder.

At trial, defendant conceded that he killed the victim but claimed that it was done in self-defense —— a claim the jury ultimately rejected. We affirmed the conviction on direct appeal, Sipa, slip op. at 2, and the New Jersey Supreme Court denied certification. State v. Sipa, 250 N.J. 489 (2022).

A-2340-23

On June 22, 2022, defendant filed a PCR petition, which he amended on May 26, 2023. On March 4, 2024, after hearing oral argument, Judge Fritch denied defendant's petition without holding an evidentiary hearing. This appeal follows.

Defendant raises the following contentions for our consideration:

POINT I

THE PCR COURT ERRED BY DENYING [DEFENDANT]'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING BECAUSE [DEFENDANT] ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL.

A. THE STANDARD OF REVIEW FOR PETITIONS FOR PCR, INEFFECTIVE ASSISTANCE OF COUNSEL, AND EVIDENTIARY HEARINGS.

B. [DEFENDANT] ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL WARRANTING AN EVIDENTIARY HEARING.

a. INEFFECTIVE PREPARATION OF A VOLUNTARY INTOXICATION DEFENSE.

b. FAILURE TO CONSULT AN EXPERT ON THE EFFECT OF [DEFENDANT]'S INTOXICATION.

5

c. FAILURE TO PROPERLY ADVISE [DEFENDANT] REGARDING HIS DECISION ON WHETHER TO TESTIFY.

d. PREJUDICE.

POINT II

TRIAL COUNSEL FAILED TO RETAIN AN EXPERT WITNESS IN THE FIELD OF PSYCHOLOGY AND NEUROPHARMA-COLOGY.

POINT III

TRIAL COUNSEL'S DECISION NOT TO ALLOW [DEFENDANT] TO GIVE A STATEMENT TO DEFENSE EXPERT, JOHN BRICK, Ph.D.

POINT IV

TRIAL COUNSEL WAS INEFFECTIVE BY PRESENTING THE TESTIMONY OF CRIME SCENE INVESTIGATOR JANICE M. JOHNSON INSTEAD OF DEFENSE EXPERTS DR. WAYNE ROSS AND DETECTIVE SCOTT EELMAN.

POINT V

TRIAL COUNSEL FAILED TO FILE A MOTION IN LIMINE TO BAR THE STATE FROM IMPEACHING [DEFENDANT]'S TESTIMONY WITH THE PRIOR BAD ACTS ALLEGED BY PAUL BARDO.

POINT VI

TRIAL COUNSEL ERRONEOUSLY RECOMMENDED, AT [T]HE BEGINNING OF THE DEFENSE CASE, THAT [DEFENDANT] NOT TESTIFY IN HIS DEFENSE.

6

II.

We begin our analysis by acknowledging the legal principles governing this appeal. PCR serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a petitioner must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. Ibid. To meet this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

Defendant contends he was denied the right to effective assistance of counsel. The law is well settled that "[i]n representing a criminal defendant, defense counsel has a 'duty to make reasonable investigations.'" State v. Knight, 256 N.J. 404, 418 (2024) (quoting State v. Chew, 179 N.J. 186, 217 (2004)). Indeed, "[t]he right to a 'thorough defense investigation is also part of the right to counsel.'" Ibid. (quoting State v. Martinez, 461 N.J. Super. 249, 276 (App. Div. 2019)). That right "includes providing the defendant with the 'necessary tools, such as investigative support and expert analysis, that he needs to carry on his defense.'" Ibid. (quoting State v. Melvins, 155 N.J. Super. 316, 320 (App. Div. 1978)).

A-2340-23

When a defendant raises an ineffective assistance of counsel claim, New Jersey courts follow the two-part test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). See State v. Fritz, 105 N.J. 42, 58 (1987). "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687). "Second, the defendant must have been prejudiced by counsel's deficient performance." Ibid. (quoting Strickland, 466 U.S. at 687).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Courts owe "extreme deference" when evaluating the performance of counsel. Fritz, 105 N.J. at 52. Relatedly, the defendant "must overcome the presumption that the attorney's decisions followed a sound strategic approach to the case." State v. Pierre, 223 N.J. 560, 578-79 (2015). "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999).

8

The second <u>Strickland</u> prong requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. Counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. <u>Id.</u> at 694. This "is an exacting standard." <u>Gideon</u>, 244 N.J. at 551 (quoting <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008)). "Prejudice is not to be presumed," but must be affirmatively proven by the defendant. <u>Ibid.</u> (citing <u>Fritz</u>, 105 N.J. at 52). Furthermore, in analyzing the prejudice prong, "the overall strength of the evidence before the factfinder" is important because "a 'verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" <u>State v. Gideon</u>, 244 N.J. 538, 552 (2021) (quoting <u>Pierre</u>, 223 N.J. at 583).

Short of obtaining immediate relief, a defendant may show that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. <u>Preciose</u>, 129 N.J. at 462-63. A PCR petitioner is not automatically entitled to an evidentiary hearing. <u>State v. Cummings</u>, 321 N.J. Super. 154, 170 (App. Div. 1999). The PCR court should grant an evidentiary hearing only when: "(1) the defendant establishes a prima facie case

in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." Ibid. (citing State v. Porter, 216 N.J. 343, 354 (2013)); see also R. 3:22-10(b).

With respect to the first of these three requirements, "[a] prima facie case is established when a defendant demonstrates 'a reasonable likelihood that [their] claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Porter, 216 N.J. at 355 (quoting R. 3:22-10(b)). "[V]ague, conclusory, or speculative" allegations are insufficient to warrant an evidentiary hearing. Ibid. (quoting Marshall, 148 N.J. at 158). Stated differently, a defendant "must do more than make bald assertions that [the defendant] was denied the effective assistance of counsel. [A defendant] must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Porter, 216 N.J. 343, 355 (2013) (quoting Cummings, 321 N.J. Super. at 170). Further, "[i]f the [PCR] court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR]. . . then an evidentiary hearing need not be

granted." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (quoting Marshall, 148 N.J. at 158).

When a PCR court does not hold an evidentiary hearing, our standard of review is de novo as to both the trial court's factual inferences from the record and its legal conclusions. State v. Walker, 478 N.J. Super. 553, 560 (App. Div. 2024). In applying such de novo review, we "view the facts in the light most favorable to the defendant." State v. Jones, 219 N.J. 298, 311 (2014).

III.

We next apply these general legal principles to the present facts. We first address defendant's contentions regarding the intoxication defense. Judge Fritch found that the record does not support defendant's claim. Highlighting the thirty-five-page case assessment letter trial counsel sent to defendant a year before the trial, the judge concluded that defendant's current claim is merely a complaint regarding trial strategy. Judge Fritch also relied on the case assessment letter to reject defendant's claim that he was not informed about this trial strategy.

Judge Fritch found the strategic decision to forgo an intoxication defense was reasonable for the same reasons outlined in counsel's letter. Specifically, the court reasoned that "[a] [v]oluntary [i]ntoxication [d]efense would be

11

[c]ontradictory to the [s]elf-[d]efense [a]rgument [defendant] [p]resented at [t]rial." Judge Fritch further explained "[t]here [w]ere no [o]bjective, [c]redible [p]roofs to [s]upport a [v]oluntary [i]ntoxication [d]efense and [s]ignificant [p]roofs to [c]ontradict this [d]efense." The judge stressed, "there is no proof that [defendant] drank any alcohol, let alone an excessive amount of alcohol or that it rendered him extremely intoxicated. We have only [defendant's] self-serving assertion made seven years after the fact through PCR counsel." The judge added that there is no evidence of defendant's BAC levels. Moreover, the judge reasoned that:

> Other factors may be considered including "how an actor's conduct is perceived by others (what he said, how he said it, how he appeared, how he acted, how his coordination or lack thereof manifested itself), any odor of alcohol or other intoxicating substance" may all be relevant factors in determining an intoxication defense. [State v. Cameron, 104 N.J. 42, 56 (1986)]. As there were no witnesses to the events of that evening, none of those factors are available leaving nothing more than [defendant]'s self-serving testimony that he was intoxicated to the degree he could not form the intent to have murdered his friend, but was nonetheless capable of operating his motor vehicle to drive home approximately 60-70 miles away from the victim's residence (Mar. 21, 2019, Tr. at 114:13-20) that evening at approximately 12:30 a.m.

Judge Fritch also held that "[e]vidence of deliberate actions by [defendant] which appear to be motivated by a desire to cover up [defendant]'s presence at

12

the victim's house on the night of the incident would further contradict the newly-presented argument that [defendant] was so intoxicated that evening he lacked the ability to reason to support a voluntary intoxication defense.[]"

Judge Fritch explained that newly obtained expert reports submitted by defendant did not address the problems with the voluntary intoxication defense identified by his trial counsel in the case assessment letter. The judge highlighted discrepancies in defendant's recollection since trial regarding how many acholic beverages he consumed on the day he killed the victim— information his new experts relied on. The judge concluded there is no evidentiary support for defendant's assertion that he was intoxicated to the point he lacked the capability to act knowingly, noting:

> Although [defendant]'s brief asserts that these experts would support [defendant]'s claim that his "level of intoxication likely ca[u]sed a form of amnesia" ([Def.] Br. at 31 ), [defendant]'s own experts both posit that [defendant]'s claimed memory loss, if true, was likely not the result of intoxication but rather the trauma of committing the horrific crime of killing his friend.

We agree with Judge Fritch's careful analysis and conclusions. Applying de novo review, we are satisfied that defendant has not established a prima facie case with respect to either prong of the Strickland/Fritz test. With respect to the first prong, defendant has failed to overcome the presumption that his attorney's

13

decisions followed a sound strategic approach. See Pierre, 223 N.J. at 578-79. As to the second prong, as trial counsel explained to defendant in the detailed case assessment letter, an intoxication defense would not have been successful, and thus would not have changed the results of the trial. See Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52.

We add that, in view of counsel's letter, there is no need to hold an evidentiary hearing to expand the record. As we have noted, the present record amply supports Judge Fritch's conclusion that the decision to abandon an intoxication defense was not only a strategic decision, but one that was supported by cogent and carefully considered reasons entitled to deference on PCR review.

IV.

We next address defendant's related contention that counsel was ineffective in advising defendant not to testify. Defendant contends that trial counsel's advice was constitutionally deficient because counsel failed to consult an alcohol intoxication expert. We are unpersuaded. Given the absence of a BAC test and the post-murder cover up indicating defendant's awareness of the circumstances of the crime, retaining an alcohol intoxication expert would not

have changed counsel's sound advice regarding the viability of an intoxication defense.

Furthermore, the record shows conclusively that the trial judge advised defendant of his right to testify. After the State rested, the following colloquy occurred between defendant and the trial judge:

> THE COURT: [Defendant], could you please remain standing? Now that the State has rested, you have a choice to make, in consultation with your attorneys, you have three options. The first option is to exercise your absolute right, your absolute constitutional right to remain silent and not take the witness stand and then to ask the [c]ourt to refrain from commenting to the jury in any way concerning your decision not to testify. Do you understand that?
>
> DEFENDANT: Yes.
>
> THE COURT: The second option is to exercise your right to remain silent, but to have the [c]ourt instruct the jury that they may not hold it against you in any way and if you choose this option, I would instruct the jury as follows, so listen carefully and this would be in my final instructions. Okay? I tell the jury that as you know, [defendant] elected not to testify at trial. It is his constitutional right to remain silent. You must not consider for any purpose or in any manner in arriving at your verdict the fact that [defendant] did not testify. That fact should not enter into your deliberations or discussions in any manner at any time. [Defendant] is entitled to have the jury consider all the evidence presented at trial. He is presumed innocent even if he chooses not to testify.

15

Your third option—well, before I go on, did you understand what I would say should you choose the second option?

DEFENDANT: Yes.

THE COURT: Okay. Your third option is to give up your right to remain silent and to testify. If you testify, you will be cross-examined and you would have to answer all questions honestly. Do you understand your three options?

DEFENDANT: Yes.

THE COURT: All right. Discuss them with your attorneys and at the appropriate time I will ask you for your response. Understood?

DEFENDANT: Yes.

Six days later, the trial judge engaged defendant in another colloquy concerning his election whether to testify:

THE COURT: So [defendant], you have made a conscious decision not to testify at this trial; is that correct?

DEFENDANT: Correct.

THE COURT: Did you have a full and fair opportunity to make that decision?

DEFENDANT: Yes.

THE COURT: Do you understand you have a constitutional right to testify?

16

DEFENDANT: Yes.

THE COURT: Has anyone threatened, forced, or coerced you into making your decision?

DEFENDANT: No.

THE COURT: And is this decision not to testify your decision?

DEFENDANT: Yes.

V.

We turn next to defendant's related contention that his counsel was ineffective by failing to file a motion in limine to preclude the State from presenting prior bad act impeachment evidence. Defendant argues this alleged failure discouraged him from testifying and constitutes ineffective assistance warranting a hearing. These contentions are belied by the record.

More specifically, defendant contends that counsel advised that testifying to his good character concerning who was the aggressor during the confrontation with the victim could prompt rebuttal testimony from witness Pual Bardo, who would impeach defendant's testimony by alluding to defendant's prior bad acts. Judge Fritch rejected defendant's argument, holding:

> Trial counsel knew that the testimony of Bardo would not be admitted unless it became relevant and Bardo was used as a rebuttal character witness. Had [defendant] testified as to his good character and

17

aver[red] that his character made it unlikely he was the aggressor against the victim, this may have 'opened the door' to the admission of bad character testimony from Bardo under N.J.R.E. 404a(l), however, as noted <u>supra</u>, the Respondent made the knowing and voluntary determination to not testify at trial, making further effort to address Bardo's possible testimony unnecessary. For these reasons, [defendant]'s present PCR petition fails to present a prima facie case that trial counsel's failure to file a motion in limine regarding Bardo's testimony satisfies either of the prongs of the <u>Strickland</u> test to constitute ineffective assistance of counsel.

We agree with the PCR court. Notably, in the case assessment letter, defendant's trial counsel explained:

> Paul Bardo [ ] will provide information about your supposed rageful responses to even mild triggers. . . . We will argue that this evidence is overly prejudicial and should not be admitted since it does not directly implicate him in this crime. We will further argue that this evidence is prohibited by N.J.R.E. 404b (prior bad acts) in that the only purpose of its admission is to either improperly paint you as a violent person or to prove that you acted in conformity with prior bad acts. However, the [c]ourt's resolution of this issue is unknown, and further dependent upon what defenses we raise.

Furthermore, trial counsel did in fact file a pretrial memorandum, noting his intention to bar Bardo as a witness:

> Defendant moves to bar the introduction of other crimes/bad acts, pursuant to N.J.R.E. 404b. Specifically, [Bardo] is a potential witness named in the

18

discovery who described a physical altercation at an unidentified time and location during a scuba trip wherein [defendant] attacked an unidentified person during a disagreement over [defendant] smoking a cigarette at dinner. This evidence plainly falls under N.J.R.E. 404b and is inadmissible.

[(Emphasis omitted).]

On March 1, 2019, the State responded, stating that it had no intention of calling Bardo in its case-in-chief and only named him as a potential rebuttal character witness.

In these circumstances, we are satisfied that counsel's strategy and performance with respect to Bardo's potentially damaging testimony in no way fell short of the standard we apply in evaluating an ineffective assistance claim. Defendant has not shown unreasonable professional judgment, nor can he show a reasonable probability of prejudice. See Strickland, 466 U.S. at 689.

VI.

We next address defendant's contention that his trial counsel was ineffective in presenting crime scene expert Janice M. Johnson, rather than experts Dr. Wayne K. Ross, M.D., P.C., and Detective Scott Eelman, who, defendant argues, would have supported a theory that only one weapon, the lamp, was used. Defendant claims counsel's choice of experts "materially contributed to [his] conviction."

19

"Determining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront." State v. Arthur, 184 N.J. 307, 320-21 (2005). As the Court described in Arthur:

> A trial attorney must consider what testimony a witness can be expected to give, whether the witness's testimony will be subject to effective impeachment by prior inconsistent statements or other means, whether the witness is likely to contradict the testimony of other witnesses the attorney intends to present and thereby undermine their credibility, whether the trier of fact is likely to find the witness credible, and a variety of other tangible and intangible factors.
>
> [Ibid.]

Accordingly, a court's review of such a decision, in the context of ineffective assistance of counsel claims, should be "highly deferential." Id. at 321 (quoting Strickland, 466 U.S. at 693).

Here, the State argues that "Johnson was far more credible and counsel obviously utilized her because she opined that the investigation was not thorough enough to make some of the determinations made by the State's experts regarding blood spatter analysis." We are not convinced that testimony by Ross and Eelman would probably have overcome the overwhelming evidence offered by the State. As Judge Fritch aptly recognized, Ross's and Elman's testimony does not address critical inculpatory evidence, including the victim's blood on

20

the knife, the puncture wounds on the victim's chest matching the prongs on the fork on the knife, or the serration pattern of the knife matching the wounds on the victim's neck. Judge Fritch held that their expert testimony was "unlikely to have been adequate to rebut the unanimity of testimony and other evidence presented at trial showing the use of the knife against the victim." Based on our own review of the record, we agree with Judge Fritch that defendant has failed to carry his burden of establishing either prong, much less both prongs, of the Strickland/Fritz test.

To the extent we have not specifically addressed any of defendant's arguments, it is because they lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division